```
 1              to the extent that that involves
 2              attorney/client privilege and work product
 3              in trial preparation materials.
 4       BY MR. WRIGHT:
 5       Q.     Who have you had that discussion with?
 6                     MR. WRIGHT:  This is -- this is a
 7              testifying expert who has been disclosed
 8              to testify live at trial.
 9                     MR. THOMPSON:  He can answer the
10              question.
11                     THE WITNESS:  I've discussed it with
12              Mr. Thompson.
13       BY MR. WRIGHT:
14       Q.     All right.  And you agree that Mr. Kennedy
15       over engaged the forks into the adjacent load, and
16       when he began to lift up, that caused the load to
17       fall over onto Mr. McKinney, true?
18       A.     No, sir, that's not true.
19       Q.     Okay.  Tell me what you disagree with.
20       A.     I disagree with -- based on what I've seen
21       in the testimony, I feel that Mr. Kennedy over
22       engaged the forks to the extent that they pushed
23       the two bundles on the far side towards the edge of
24       the trailer.  Then he withdrew it, put them in the
25       correct position.  And as he started to lift, the
```

```
 1      shift in the load caused the two far bundles to
 2      fall over.
 3      Q.      Okay.
 4      A.      I don't think he lifted them.
 5      Q.      All right.  Is it your testimony here
 6      before the jury, who can watch this video at
 7      trial, that a reasonably safe forklift operator is
 8      allowed to over engage the forks while they know a
 9      person is on the other side, and go underneath the
10      first load into the second load, underneath the
11      second load; is that acceptable?
12                  MR. THOMPSON:  I object to the form
13            of the question.
14                  THE WITNESS:  Again, I don't -- I
15            believe Mr. Kennedy -- it was --
16            Mr. Kennedy shouldn't have pushed the
17            forks in far enough to push the bundles.
18            But then he withdrew them, and when he
19            started the lift it was in the correct
20            position.  But that the movement of the
21            trailer caused those, but it was his -- he
22            should not have contacted the bundles on
23            the far side.
24      BY MR. WRIGHT:
25      Q.      Okay.
```

www.veritext.com           Veritext Legal Solutions           800-556-8974

Case 3:21-cv-00414-KAC-JEM  Document 144-11  Filed 06/22/23  Page 2 of 11  PageID #: 1387

1             THE WITNESS:  I'm in agreement that,
 2         yes, the actions -- the only thing out
 3         there that could have moved the bundles
 4         into the position they were at where they
 5         could fall would have been the forklift.
 6    BY MR. WRIGHT:
 7    Q.     Okay.  And that was under the control of
 8    Mr. Kennedy, right?
 9    A.     That is correct, yes.
10    Q.     It wasn't under the control of
11    Mr. McKinney, correct?
12    A.     That is correct, yes.
13    Q.     And to be clear, when I say bundle, it's
14    actually two bundles that fell over onto
15    Mr. McKinney, correct?
16    A.     That is correct, yes.
17    Q.     Mr. Kennedy was the cause of both of those
18    bundles falling off that trailer, correct?
19             MR. THOMPSON:  Object to the form of
20         the question.
21             THE WITNESS:  Yes.
22    BY MR. WRIGHT:
23    Q.     Now, you have taken some photographs that
24    were provided with your report, and you have also
25    taken some measurements.  Can you tell me

Page 47

```
 1      your opinions on his testimony that when he looked
 2      at that -- one of those photographs that showed
 3      the scuff mark, he says that that proves that he
 4      backed out.
 5                 And that's what you are basing your
 6      opinion on, too, is that photograph; is that
 7      correct?
 8      A.    No.
 9      Q.    It's not?
10      A.    It's not correct.
11      Q.    Okay.
12      A.    He said --
13      Q.    Okay.
14      A.    I'm sorry, go ahead.
15      Q.    No, I cut you off.  You were -- you wanted
16      to clarify.
17      A.    Okay.  He said that -- I agree that's what
18      he said, but it doesn't match the science of what
19      happened, okay?
20                 So based on the science, I believe
21      Mr. Kennedy was incorrect and he did contact those
22      other two bundles --
23      Q.    Okay.  So he --
24      A.    -- based on --
25      Q.    Go ahead, I'm sorry.
```

Page 55

1   A.    I'm sorry.  Just based on the science of it,
2   yes.
3   Q.    If --
4   A.    Go ahead.
5   Q.    If that is what he told the TOSHA officer,
6   that he didn't over engage them, he's mistaken
7   about that, correct?
8   A.    Yes, I would say he was mistaken about that.
9   Yes.
10  Q.    Okay.  And if he said that there was no
11  visible damage or tearing to the underside of that
12  bundle, he would be mistaken about that too?
13  A.    Yeah, there's some small tears, as shown in
14  my Photographs 13 and 14.
15  Q.    Right.  And to really gauge the depth of
16  that damage in order to actually understand how
17  far up into that material the damage was, we'd
18  have to have that piece of evidence preserved and
19  able to determine what the damage was, correct?
20  A.    That would be required to gauge the damage,
21  but I'm not sure how that changes what -- the cause
22  of the accident.
23  Q.    Well, it would tell us whether -- whether
24  what you say happened is more likely than not
25  true, or an alternative theory.

www.veritext.com            Veritext Legal Solutions            800-556-8974

Case 3:21-cv-00414-KAC-JEM   Document 144-11   Filed 06/22/23   Page 5 of 11   PageID #: 1390

1  Q. Okay. So he was present when you were
2  taking these measurements of the bundle, correct?
3  A. He was, I guess. Yes, he was there.
4           MR. WRIGHT: All right. Let's mark
5      that photograph as the next-numbered
6      exhibit.
7           (WHEREUPON, a document was marked as
8      Exhibit Number 2.)
9  BY MR. WRIGHT:
10 Q. And that is an accurate copy of one of the
11 photographs that you took there at the scene;
12 correct?
13 A. That is correct.
14          MR. THOMPSON: Sandy, is this Number
15      2?
16          MR. WRIGHT: Yes.
17          MR. THOMPSON: Thank you.
18 BY MR. WRIGHT:
19 Q. Mr. Eroh, with that in mind, when you were
20 viewing the inspection site and taking these
21 measurements, was it obvious to you that
22 Mr. Kennedy had over engaged the forks while you
23 were doing that there at the scene?
24 A. No, sir, it was not.
25 Q. And why not?

Page 61

1     A.    No.
2     Q.    Why not?
3     A.    Because I didn't have the measurements from
4 the forklift to see if they matched the two scuff
5 marks.
6         MR. WRIGHT:  Okay.  All right.  We
7 can take a break.  Do you want to do five
8 minutes or what?
9         MR. THOMPSON:  Five is fine.
10         MR. WRIGHT:  Okay.  We'll come back
11 on the record -- I've got 11:14, so let's
12 just say 11:20.
13         MR. THOMPSON:  All right.
14         MR. WRIGHT:  Thank you.
15         THE VIDEOGRAPHER:  We are off the
16 record, the time is 11:14 a.m.
17         (An off-the-record discussion was
18 held.)
19         THE VIDEOGRAPHER:  We are now on the
20 record, the time is 11:23 a.m.
21 BY MR. WRIGHT:
22     Q.    Mr. Eroh, before we took a break, and
23 earlier you had told us that you had taken some
24 notes during your inspection, and I believe also
25 during what you called your interview with

Page 62

```
 1      asked to give testimony here before the court
 2      today; is that correct?
 3      A.      Well, we are not before the court today,
 4      but, yes.
 5      Q.      Well, you understand we are going to -- we
 6      are going to play your video deposition for the
 7      jury at trial, so we are before the court.
 8              This is a court-sanctioned deposition.
 9      You understand that, don't you?
10      A.      Yes.
11      Q.      And in your mind, you have resolved the
12      answers to all of the questions that need to be
13      determined for you to give an opinion and
14      conclusion that Mr. McKinney is at fault for this;
15      is that right?
16      A.      Mr. McKinney and Mr. Kennedy both share
17      responsibilities, is my opinion.
18      Q.      Okay.  You are saying that Mr. Kennedy is
19      at fault; is that right?
20      A.      Yes, Mr. Kennedy bore some responsibility as
21      the forklift operator in this accident, yes.
22      Q.      And you are also saying that Mr. McKinney
23      is at fault for something that he did or didn't
24      do.
25              And in your mind, you have answered
```

```
 1      and resolved all of the questions necessary in
 2      order to make that determination; is that correct?
 3      A.      Yes, sir.
 4      Q.      And you haven't spoken to Mr. McKinney or
 5      anyone from his family, correct?
 6      A.      I have not spoken to anyone from
 7      Mr. McKinney or Mr. McKinney's family, that is
 8      correct.
 9      Q.      And you haven't ever inspected the trailer
10      or the gooseneck or the truck; is that correct?
11      A.      I have not inspected the trailer, the
12      gooseneck or the truck, that is correct.
13      Q.      And you haven't taken any measurements of
14      the gooseneck to see how tall it is from the
15      lowest point to the highest point; is that right?
16      A.      That is correct.
17      Q.      And you haven't put anyone behind that who
18      would be in the position of where Mr. Kennedy says
19      Mr. McKinney was to see if he actually could see
20      him at any point, is that fair to say?
21      A.      Yes, because we don't have enough data to
22      establish those positions.  Yes.
23      Q.      Okay.  And you didn't even make any
24      attempt; is that right?
25      A.      I didn't make any attempt to re-create that,
```

1    the views that Mr. Kennedy and Mr. McKinney had of
2    each other, but I reviewed the deposition of
3    Mr. Kennedy and the statement by Mr. Hutton that
4    says that they made eye contact and they
5    communicated to each other.
6    Q.     And based on that, you in your mind have
7    decided that all of the answers to the questions
8    have been resolved in order for you to place blame
9    on Mr. McKinney for causing his own death, is that
10   true?
11   A.     The blame lies with Mr. McKinney and
12   Mr. Kennedy.
13   Q.     And that's because -- and you have answered
14   and resolved all of those questions, is that
15   correct, that you need in order to fairly and
16   accurately place blame on Mr. McKinney; is that
17   correct?
18   A.     I place blame on Mr. McKinney and
19   Mr. Kennedy.
20   Q.     I'm focusing on Mr. McKinney right now,
21   what you say is his fault.
22            What is he at fault for?
23   A.     He's at fault for leaving a safe position
24   and walking in behind in an area that he -- the
25   fall zone, and being in the wrong place, putting

Page 138

```
 1      himself in the position where he could be injured
 2      by the bundles falling.
 3      Q.      Now, is there any reason that Curtis
 4      Kennedy, that you know of, could not have waited
 5      until Mr. McKinney was in a position other than
 6      where he was, in other words, in a place where he
 7      would be visible to Mr. Kennedy while he was doing
 8      the offloading?
 9                  MR. THOMPSON:  Objection.
10      BY MR. WRIGHT:
11      Q.      Is there any reason he couldn't have done
12      that?
13                  MR. THOMPSON:  Objection, calls for
14            speculation.
15                  THE WITNESS:  If Mr. McKinney was
16            being utilized as a spotter to watch for
17            traffic where Mr. Kennedy could not see
18            it, i.e. behind on the other side of the
19            trailer, then he was in the best position
20            to being a spotter and being out of any
21            zone or any danger areas around the load
22            that was being lifted.
23      BY MR. WRIGHT:
24      Q.      So it's your testimony that Mr. Kennedy was
25      using him as a spotter?
```

www.veritext.com          Veritext Legal Solutions          800-556-8974

Case 3:21-cv-00414-KAC-JEM   Document 144-11   Filed 06/22/23   Page 11 of 11   PageID #: 1396