# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ALBERTA LOUISE PERRY, surviving spouse and next kin of VINCENT MCKINNEY, deceased,<br>    Plaintiff, | )<br>)<br>)<br>) | |
| | ) | |
| v. | )<br>) | No.  3:21-CV-00414-KAC-JEM<br>JURY DEMAND |
| JENKINS & STILES, LLC,<br>    Defendant. | )<br>) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFF FROM ARGUING THAT DEFENDANT INTENTIONALLY DESTROYED EVIDENCE

Comes now Defendant Jenkins & Stiles LLC, by and through counsel, and hereby files its Reply in support of its Motion to Preclude Plaintiff from Arguing that Defendant Intentionally Destroyed Evidence (Dkt. No. 145), and would state as follows:

    **a. The only outcome of Plaintiff's arguments that Defendant intentionally destroyed evidence is unfair prejudice to the Defendant, and the jury hearing irrelevant evidence on a moot issue.**

Plaintiff's arguments regarding Defendant's allegedly intentional acts focus on the plastic wrapping on the bundles of wall panels that fell on Vincent McKinney, and the dirty forklift marks on that plastic wrapping. Plaintiff argues that if she had access to those materials, she would be able to "establish whether the forks went too far underneath the load that was on the other side of the trailer . . . it follows one could them compare the marks on the plastic with the actual forks to see if they match in size and distance between them."[1] Plaintiff even argues that soil analysis is needed to match the dirty marks to the forklift.[2] Plaintiff asserts that photographs of the dirty marks and plastic wrap were not provided to her until the end of discovery, and it was only by blind luck

---

[1] Dkt. No. 139, Plaintiff's Motion for Sanctions, p. 9.
[2] Dkt. No. 139, Plaintiff's Motion for Sanctions, p. 10; Dkt. No.146, Plaintiff's Reply in support of Motion for Sanctions, p. 6.

that Plaintiff obtained a photo in the file of the Knox County Medical Examiner's Office.[3] However, Plaintiff was in possession of one hundred photos and over thirty minutes of video footage from the Knox County Sheriff's Office that Plaintiff produced to Defendant in her initial disclosures on March 8, 2022. The photos and videos were taken by first responders before the materials were moved (with the permission and advice of first responders and Defendant's third-party risk performance specialist) and before the site was secured. The TOSHA expert himself had access to these materials and reviewed the photos.[4]

Plaintiff would have the court believe that the only way she can prove that Curtis Kennedy over-engaged the forks and contacted the bundles on the far side of the trailer and causing the bundles to fall, is to have the actual bundles and the dirty marks themselves. However, the parties' experts had no trouble reaching their conclusions without that evidence. Plaintiff's expert used the photos Plaintiff obtained from Knox County to establish the following: "It is my opinion within a reasonable degree of engineering probability that Kennedy did over-engage the forks underneath the far (driver side) stacks and caused the far (driver side) bundles to fall off the trailer when he attempted to lift the bundles."[5] Defendant's expert has opined that Kennedy over-engaged the forks, pushing the driver side bundles toward the edge of the trailer, then withdrew the forks, and then when he lifted the bundles on the passenger side of the trailer, the bundles on the driver side fell.[6] Eroh testified that "the only thing out there that could have moved the bundles into the position they were at where they could fall would have been the forklift."[7]

---

[3] Dkt. No. 139, Plaintiff's Motion for Sanctions, p. 2, 11; Dkt. No. 153, Plaintiff's Sur-Response in support of Motion for Sanctions, p. 2-3.
[4] Exhibit 1, Johnson Dep. 71:20-72:18.
[5] Dkt. No. 144-12, Bullen Report, p. 26-27.
[6] Dkt. No. 145-11, Eroh Dep. 39:21-40:2.
[7] Dkt. No. 145-11, Eroh Dep. 47:1-5.

The experts agree that Kennedy over-engaged the forklifts, leaving the marks on the bundles. The experts agree that Kennedy's actions contributed to the accident. The wrapping paper and the dirty marks on them appear to add no probative value to the case. *See* Fed. R. Evid. 401 (Evidence is relevant if: (a) it has a tendency to make a fact more or less probably than it would be without the evidence; and (b) the fact is of consequence in determining the action.") Even if the evidence is relevant, it is cumulative and unnecessary. *See* Fed. R. Evid. 403 "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence."

Plaintiff did not need the plastic wrapping or dirty forklift marks to support her case. The only purpose the plastic wrapping or dirty forklift marks may serve at this point is to support Plaintiff's conspiracy theory she concocted involving the Defendant, its employees, its safety consultant, its attorneys, and its expert in destroying or concealing evidence from Plaintiff. There is no <u>factual</u> support for Plaintiff's argument that Defendant intentionally destroyed evidence. The only result of Plaintiff's arguments about the imagined intentional acts would be to unfairly prejudice the Defendant and distract the jury from the real issues in this case.

**b. Defendant did not intentionally destroy evidence. It cleared and secured the scene based on permission by first responders and advice by its safety consultant.**

The site was not cleared and secured until after first responders left the scene and released it to Defendant. The truck, trailer, and building materials were not moved until after Defendant was given permission by law enforcement and consulted the third-party risk performance specialist Sandy Redmond. Curtis Kennedy testified that the sheriff said they could clear the site,[8] TOSHA inspector Michael Johnson testified that the "police gave them permission" to move the scene,[9]

---

[8] Dkt. No. 144-1, Kennedy Dep. 177:2-11.
[9] Dkt. No. 150-2, Johnson Dep. 110:13-16.

Josh Sullins testified that Redmond advised him they could secure the site[10], and Redmond testified that it is not required that a scene be preserved before TOSHA arrives.[11]

Plaintiff also attempts to bring Defendant's counsel into her supposed conspiracy (not for the first time) when she asserts that "Jenkins & Stiles' singular focus was damage control, notifying their attorneys, calling their outside insurance fixer "risk management" team immediately to the scene . . . ."[12] The testimony of Sullins cited by Plaintiff does not support this assertion and has nothing to do with notifying Defendant's attorney. In fact, Sullins stated explicitly that no one from Jenkins & Stiles contact their attorneys ("Q. As far as you know, did anyone from Jenkins & Stiles contact me, your attorney, or—or my office directly to engage us? A. No, that would have been done completely separate. I think you're – yeah, I don't know. I don't know the relationship.")[13]

Plaintiff also relies on media guidelines prepared by Defendant's insurance agency to support her theory that Defendant destroyed or concealed evidence.[14] The Plaintiff would have the jury believe that Sandy Redmond, the safety consultant working for Defendant's insurance agency, was on the scene to assist in the conspiracy to destroy or conceal evidence. Plaintiff points to the Guidelines for the Spokesperson produced by Ms. Redmond as Defendant's attempt to "control the narrative".[15] The entirety of the Guidelines presents information on media relations. The purpose Redmond gave for this was to assist the company spokesperson with the media. "Oftentimes where there is an accident where 911 is called, the news media will show up to ask questions and it is best to preserve the identity of the victim and all that. . . [M]edia oftentimes

---

[10] Exhibit 2, Sullins Dep. 65:19-23.
[11] Dkt. No. 150-1, Redmond Dep., 45:3-22.
[12] Dkt. No.151, Plaintiff's Response to Defendant's Motion, p. 5.
[13] Exhibit 2, Sullins Dep. 104:11-16.
[14] Dkt. No. 139, p. 12; Dkt. No. 139-6, p. 24-26 "Guidelines for the Spokesperson".
[15] Exhibit 3, Redmond Dep., 83:13-84:15.

overblows a situation, shares details that aren't true. It is just important to keep everything simple."[16]

The conspiracy to intentionally destroy evidence is not supported by the facts. Plaintiff would ask the court to permit her to present this conspiracy to the jury based on evidence that either does not exist, or is so twisted that the jury would not be presented the facts accurately. The facts establish that first responders permitted Defendant to secure the scene, and they did so after consulting with their third-party safety consultant. Plaintiff should not be permitted to twist the facts of the case to fit an imagined conspiracy theory. The jury's attention would be taken by Plaintiff's arguments about fanciful intentional acts, and not focused on the basis of the accident: McKinney's actions, Kennedy's actions, and Robert Hutton's witnessing of their actions.

Plaintiff wants the jury to focus on what happened after the accident and be distracted by a supposed conspiracy to destroy evidence. The jury *should* focus on why Kennedy approached the bundles (McKinney gave him the all-clear signal). Plaintiff wants the jury to ignore that interaction, and indeed her own expert ignored that interaction. The jury *should* focus on what caused the bundles to fall *after* McKinney indicated to Kennedy that he could unload the bundles The Plaintiff does not want the jury to consider the interaction between Kennedy and McKinney, which led to Kennedy starting the unloading process. Plaintiff wants to be able to make arguments that Defendant intentionally, purposely, and wrongfully destroyed evidence with the intent to evade liability. This would unfairly distract the jury from the event which set the accident in motion – McKinney made eye contact with Kennedy and signaled to him that he could approach the trailer and begin unloading the bundles. In essence, Plaintiff wants the jury to render a verdict based

---

[16] *Id.*

entirely on Plaintiff's arguments of a speculative conspiracy to destroy evidence, rather than the actual events that caused the accident.

### c. Plaintiff relies on speculation from the TOSHA investigator who characterized his own inspection as failed and declined to speculate about Defendant's intentions.

Perhaps Plaintiff's favorite piece of evidence supporting her conspiracy theory comes from TOSHA investigator Michael Johnson's statement, ". . . I feel like I've been hoodooed[,]" with which Plaintiff began her Motion for Sanctions.[17] However, Johnson agreed that he is "not hired to go make a determination whether these witnesses are being truthful . . . [,]" that he must "take what they tell [him] at face value . . . [,] and that he is "not in the business of judging credibility . . . ."[18] Plaintiff's counsel asked Johnson if he knew why Defendant did not point out the dirty forklift marks or give him photographs of them, and Johnson answered, "I can assume speculation, but no, I do not."[19] When asked whether he would have expected Redmond to mention the dirty marks on the bundles, Johnson testified, "I don't expect anything from anyone."[20] Moreover, when Plaintiff's counsel attempted to elicit a statement by Johnson that Kennedy made a false statement about the accident, Johnson testified, "A man had just died. So I don't want to hold Mr. Kennedy to the account that he's providing false statements when he just went through such a traumatic event."[21]

Plaintiff also asserts that "Defendant wishes to characterize TOSHA's investigation as incompetent . . . ."[22] On the contrary, it is Mr. Johnson himself who expressed frustration with his

---

[17] Dkt. No. 139, p. 1; Dkt. No. 139-1, Johnson Dep. 168:24.
[18] Exhibit 1, Johnson Dep. 152:10-21.
[19] Exhibit 1, Johnson Dep. 130:5-17.
[20] Exhibit 1, Johnson Dep. 141:2-24.
[21] Exhibit 1, Johnson Dep. 158:25-159:4.
[22] Dkt. No.151, Plaintiff's Response to Defendant's Motion, p. 12.

investigation, stating, ". . . it appears that I failed to look at something I should have."[23] Plaintiff places tremendous reliance on Mr. Johnson's speculation that Defendant hid information from him, but Plaintiff's counsel elicited the testimony from Mr. Johnson that he is not in the business of judging credibility, and that he would merely be speculating otherwise. Johnson is the only witness who has made any statements indicating Defendant did anything bordering on intentional, and only after selective, argumentative, leading questioning by Plaintiff's counsel over the objections of Defendant's counsel.

### d. Plaintiff is attempting an end-run around her burden of proof by masking a Motion for Summary Judgment as a Motion for Sanctions, because her arguments about Defendant's intentional acts should not be admitted.

Plaintiff would have the Court believe that Defendant's Motion is a tardy motion for summary judgment. However, the courts envision that motions in limine and motions for summary judgment work together. "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions. In other words, the motion in limine is an evidentiary device that provides a useful adjunct to other devices for truncating the trial such as motions for summary judgment." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (internal citations omitted).

Plaintiff's own argument in this regard is hypocritical given that the sanctions requested by Plaintiff in her Motion for Sanctions (Dkt. No. 139) include that the "Court should direct that it is established for the purposes of the action that Jenkins & Stiles intentionally destroyed records containing material evidence for the purpose of evading liability . . ." and that "Jenkins & Stiles should be precluded from disputing , or attempting to dispute, that they intentionally destroyed the

---

[23] Exhibit 1, Johnson Dep. 130:20-132:3.

record of material evidence of that would have established the placement of the forks on the cargo bundle (the plastic wrap on the cargo that contained the forklift marks on the bottom of the cargo bundles) . . . ."[24] Plaintiff has a problem with a motion in limine barring speculative and prejudicial arguments, but would have the Court not only direct that Defendant destroyed evidence, but also order that Defendant cannot even defend itself by offering evidence to the contrary.

An argument like Plaintiff's was put forward in the case *Petty v. Metro Gov't of Nashville & Davidson Cty.*, 687 F.3d 710 (6th Cir. 2012). In *Petty* the plaintiff filed a motion in limine seeking to exclude evidence of his alleged untruthfulness that the defendant intended to offer in support of two affirmative defenses: unclean hands and after-acquired evidence. *Petty*, 687 F.3d at 720. The trial court granted the motion and excluded the evidence. The defendant appealed, arguing that "the court improperly granted a motion summary judgment 'masquerading' as a motion in limine." *Id.* The Sixth Circuit rejected that "procedural challenge" and affirmed the trial court's granting of the motion in limine. *Id.* at 721. "The record suggests that [defendant] understood that [plaintiff's] motion in limine might dispose of its affirmative defenses, and [defendant] fails to argue that it lacked an opportunity to present evidence in response." *Id.*

Here, Plaintiff is clearly well aware that an evidentiary ruling barring her from presenting evidence of her theory that Defendant intentionally destroyed evidence could dispose of such a claim. There is no "evidence" that Defendant intentionally destroyed evidence, only Plaintiff's arguments relying on her own theories and the admitted speculation of the TOSHA investigator that he himself admits was the result of a flawed investigation.

---

[24] Dkt. No. 139, Plaintiff's Motion for Sanctions, p. 24.

### e. Conclusion

The jury should be permitted to examine the relevant and probative facts, not speculation by witnesses elicited via argumentative and leading questioning by Plaintiff's counsel. The Plaintiff's argument that Defendant intentionally destroyed evidence is based on just that – speculation and argument. If Plaintiff is permitted to continue with those arguments, she would seek to distract jurors and enflame their passions, rather than form their reasoned findings on facts and relevant, reliable evidence. The jury's findings could be based on what happened *after* the accident, and the twisting of those events by Plaintiff's counsel, not based on the evidence of McKinney's actions, Kennedy's actions, and Robert Hutton's witnessing of their actions. For these reasons, Plaintiff should be forbidden from arguing that Defendant intentionally destroyed evidence.

Respectfully submitted this 18th day of July, 2023.

**COPELAND, STAIR, VALZ & LOVELL, LLP**

*/s/ G. Graham Thompson*
ANGELA CIRINA KOPET, BPR 017921
G. GRAHAM THOMPSON, BPR 034467
735 Broad Street, Suite 1100
Chattanooga, TN 37402
Phone: 423-713-7075

## CERTIFICATE OF SERVICE

This is to certify that on the 18th day of July, 2023, the foregoing pleading was filed electronically and that the notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.


**COPELAND, STAIR, VALZ & LOVELL, LLP**

By:    */s/ G. Graham Thompson*