UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ALBERTA LOUISE PERRY, surviving spouse and next kin of VINCENT MCKINNEY, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 3:21-CV-414-KAC-JEM |
| | ) | |
| JENKINS & STILES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion to Exclude or Limit Testimony of Robert Bullen [Doc. 313]. Plaintiff responded in opposition to the motion [Doc. 345]. Defendant filed a reply [Doc. 351]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion [**Doc. 313**].

I.      **BACKGROUND**

This lawsuit arose out of the death of Vincent McKinney ("Mr. McKinney") on April 15, 2021, at a U-Haul construction site [Doc. 270]. Defendant Jenkins & Stiles, LLC is a construction company, and it was the general contractor for the construction site [*Id.* ¶ 10]. Mr. McKinney was delivering cargo to the construction site, namely a load of five wrapped bundles of insulated panels [*Id.* ¶¶ 14–15]. While some of the facts are in dispute, the parties do not seem to dispute that as Curtis Kennedy ("Mr. Kennedy"), a forklift operator and jobsite superintendent for Defendant,

began unloading the cargo, the cargo fell off the trailer onto Mr. McKinney [Doc. 313 p. 2]. Mr. McKinney died on the scene [*Id.*].

"[Defendant] has admitted '[Mr.] Kennedy over engaged the forks, contacted the bundles on the far side and that the bundles fell when [Mr.] Kennedy began lifting'" [*Id.* (citations omitted)]. But Defendant "maintains the cause of the death was [Mr.] McKinney's own actions leaving the area from beside his truck, after providing [Mr.] Kennedy with an all clear signal[] and walking under the bundles at the time [Mr.] Kennedy began unloading" [*Id.* (citation omitted)]. Plaintiff claims that "[Mr.] Kennedy failed to confirm the area around the trailer was clear and that it would be safe to commence offloading" [Doc. 270 ¶ 24 (emphasis omitted)].

On February 13, 2023, Plaintiff disclosed her expert witness, Robert Bullen, P.E., J.D. ("Mr. Bullen"), who generally opines on "the cause of the accident, obligations of [Defendant] and its employees, practices, and procedures for unloading building materials such as those involved in the incident, construction site safety, and the application of the Occupational Safety and Health Act" [Doc. 313 p. 2 (citations omitted)]. On March 28, 2023, Mr. Bullen submitted a report "to augment the opinions in [his] preliminary report, dated February 13, 2023, and [t]o rebut the opinions and testimony of the Defendant's experts" [Doc. 313-1 p. 3]. He submitted a Second Supplemental Report dated May 5, 2025 [Doc. 313-2].

Defendant moves to exclude four of Mr. Bullen's opinions pursuant to Federal Rules of Evidence 402, 403, and 702 [Doc. 313]. First, Defendant challenges Mr. Bullen's opinion that "[Defendant] and/or Mr. Kennedy 'rendered the unloading process unreasonably dangerous and directly contributed to the circumstances that caused the accident'" ("Opinion No. 1") [*Id.* at 4 (citing Doc. 198-1 p. 35; Doc. 313-1 p. 4; Doc. 313-2 pp. 6, 9)]. Defendant asserts that Opinion No. 1 is an impermissible legal conclusion [*Id.* at 4–5]. Second, Defendant challenges Mr. Bullen's

2

statement, "If Mr. Kennedy observed Mr. McKinney winding the straps, then he knew that Mr. McKinney was adjacent to the trailer since the straps are attached to the trailer" ("Opinion No. 2") [*Id*. at 5 (citing Doc. 313-2 p. 8)]. Defendant claims that Opinion No. 2 is impermissible state-of-mind testimony [*Id*. at 5–6]. Third, Defendant states that the Court should prohibit Mr. Bullen from referencing the "Commercial/Industrial Installation Guide" produced by Nucor/Metl-Span ("Metl-Span's Installation Guide") ("Opinion No. 3") because its employees never received a copy of it [*Id*. at 7–8]. Finally, Defendant challenges Mr. Bullen's use of demonstrative aids and exemplars [*Id*. at 8–12]. It generally claims that they do not provide a fair representation of the items they are supposed to represent and that they are duplicative of other evidence [*Id*.].

Plaintiff responds in opposition to the motion [Doc. 345]. With respect to Opinion No. 1, she denies that it is an impermissible legal conclusion, explaining that it "represents permissible expert testimony" [*Id*. at 3]. She further denies that Mr. Bullen opines on Mr. Kennedy's state of mind [*Id*. at 5–7]. Instead, Plaintiff states that Mr. Bullen's statement "describes what [Mr.] Kennedy testified he saw and [Mr.] McKinney's location" [*Id*. at 5]. As to Opinion No. 3, she argues that Defendant provides no legal basis for its position, noting that "[e]xpert testimony on industry customs and standards does not depend on whether a particular defendant had actual possession of that standard" [*Id*. at 9]. Finally, Plaintiff submits that "the Court should allow [Mr.] Bullen to reconstruct the circumstances surrounding the incident[,] including [Mr.] Kennedy's visibility during it because there is no physical evidence that captures this perspective" [*Id*. at 11]. "[A]ny minor differences between the demonstration and the original incident can be addressed with cautionary instructions" [*Id*. at 12].

3

Defendant replies that Opinion No. 1 impermissibly conveys the "legal standards to the jury" [Doc. 351 p. 3 (citation omitted)]. With respect to Opinion No. 2, Defendant asserts that "[Mr.] Bullen is not offering an opinion as to [Mr.] Kennedy's location, [Mr.] McKinney's location, the location of the trailer, the location of the straps, or any other physical fact" [*Id.* at 6]. Instead, Defendant states, "He is offering an opinion as to what [Mr.] Kennedy knew" [*Id.* (emphasis omitted)]. Further, while Plaintiff attempts "to characterize the [Metl-Span] Installation Guide as a general 'industry standard,'" Defendant contends that it "is a specific document related to the specific wall panels that [Mr.] Kennedy was unloading from [Mr.] McKinney's trailer[,]" which it did not receive [*Id.* at 7]. Finally, Defendant claims that "the differences between the bundles, forklift, truck, and trailer actually involved in the accident and the hollow mock bundles, different forklift, and the truck and trailer over four and half years after the accident are so substantial that the admission of such evidence would be prejudicial to [Defendant]" [*Id.* at 9].

## II.     STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;

4

(c)      the testimony is the product of reliable principles and methods; and

(d)      the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

5

## III.    ANALYSIS

The Court will exclude Mr. Bullen's legal conclusions and state-of-mind testimony. But it declines to exclude at this time, Mr. Bullen's reliance on the Melt-Span Installation Guide or his exemplars and demonstrative aids.

### A.    Legal Conclusions

Defendant challenges Mr. Bullen's opinion that "[Defendant] and/or Mr. Kennedy 'rendered the unloading process unreasonably dangerous and directly contributed to the circumstances that caused the accident'" [Doc. 313 p. 4 (citing Doc. 198-1, p. 35; Doc. 313-1 p. 4; Doc. 313-2 pp. 6, 9)]. According to Defendant, "This is essentially another way of saying that [Defendant] is responsible for and caused the accident" [*Id.*]. While Rule 704 allows "an expert opinion [to] brace an ultimate issue[,]" Defendant asserts that it does not allow an expert to "render legal conclusions" [*Id.* at 5 (citation omitted)]. Defendant therefore asks that the Court prohibit Mr. Bullen from "testify[ing] that the actions of [Defendant], [Mr.] Kennedy, or other [Defendant] employees caused or contributed to the circumstances that caused this accident" [*Id.*].

Plaintiff responds that Defendant's "[m]otion fails because [Mr.] Bullen's opinion represents permissible expert testimony on technical matters, not impermissible legal conclusions" [Doc. 345 p. 3]. She contends that "experts are permitted considerable latitude in their testimony" [*Id.*]. Mr. Bullen's Opinion No. 1, Plaintiff claims, "uses industrial safety terminology" [*Id.* at 4]. According to Plaintiff, "'Unreasonably dangerous[,]' is a phrase safety professionals use to describe hazardous conditions, not a legal standard" [*Id.*]. She further explains that Mr. Bullen's opinion that the offloading process was "unreasonably dangerous" is "a technical conclusion

derived from applying the facts to established industry practices and customs" [*Id*.].[1] In addition, Plaintiff states that "'directly contributed to the circumstances' is a technical causation opinion within the scope of [Mr.] Bullen's safety expertise" [*Id*.]. She submits that "Defendant's objection is also inconsistent with its own admission that '[Mr.] Kennedy over-extended the forks and caused the bundles to fall'" [*Id*. (citation and emphasis omitted)]. "[Mr.] Bullen should not be prohibited[,]" Plaintiff claims, from testifying to facts and (conclusions) that Defendant has already conceded" [*Id*.]. Plaintiff denies that Mr. Bullen "define[s] the governing legal standard or appl[ies] the standard to the facts[,]" arguing that he "instead analyzes the technical aspects of the unloading process and applies professional safety standards" [*Id*.]. She claims that he "avoids legal terminology entirely" and "merely implies 'responsibly'" [*Id*. at 4–5].

Defendant replies that "[Mr.] Bullen's opinion is that [Defendant] caused the accident" [Doc. 351 p. 2]. It denies that Mr. Bullen merely opined about responsibility [*Id*. at 3]. While Plaintiff contends Mr. Bullen's "unreasonably dangerous" opinion "is 'a phrase safety professionals use to describe hazardous conditions[,]'" Defendant responds that Plaintiff provides no citation for that argument [*Id*.]. It argues that Plaintiff's attempt to characterize Mr. Bullen's opinion that Defendant "directly contributed to the circumstances" as a "technical causation opinion[,]" fails to acknowledge that "[Mr.] Bullen stated seven times that [Defendant] caused either the 'this accident' or caused '[Mr.] McKinney's fatal injuries'" [*Id*. (emphasis and citation omitted)]. It outlines Tennessee law [*id*. at 4–5] and argues that "[Mr. Bullen] gives the legal standard of duty [he] says [Defendant] had to conform to, and concludes that [Defendant] breached that duty" [*id*. at 5]. Defendant states that the Court "barred [its] expert Charles Eroh from

---

[1]     Plaintiff states, "This is not a technical conclusion derived from applying the facts to established industry practices and customs" [Doc. 345 p. 4]. This appears to be a typographical error.

testifying that [Mr.] McKinney 'bears responsibility for the incident'" [*Id.* (citation omitted)]. Claiming that "[Mr. Bullen] goes further and offers conclusions as to duty, breach, and causation[,]" Defendant asks that the Court preclude such testimony [*Id.* at 5–6].

While an expert's opinion may embrace an ultimate issue, Fed. R. Evid. 704(a), an expert may not render legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) (explaining that "[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case" (citation omitted)). A legal conclusion is not helpful to the jury because it merely instructs the jury what verdict to reach. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). "[It also] convey[s] the witness' unexpressed, and perhaps, erroneous, legal standards to the jury." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). Courts have "a relative wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion[,]" but "[t]hat discretion is not unlimited." *Id.* (citation omitted).

In order to determine whether an opinion constitutes a legal conclusion, the United States Court of Appeals for the Sixth Circuit instructs courts "to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Id.* (citation omitted). In Tennessee, "negligence" is "defined as the failure to exercise reasonable care[.]" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). A plaintiff must show "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Id.* (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). And "duty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against

8

unreasonable risks of harm." *McCall*, 913 S.W.2d at 153 (citation omitted). If there is a duty of care, "the question becomes whether defendant failed to exercise reasonable care under the circumstances, i.e., whether defendant breached the duty." *Id*.

Mr. Bullen's opinion that Mr. Kennedy and/or Defendant "rendered the unloading process unreasonably dangerous and directly contributed to the circumstances that caused this action" [Doc. 198-1, p. 35; Doc. 313-1 p. 4; Doc. 313-2 pp. 6, 9], provides the legal standard that Defendant should have conformed to and concludes that Defendant breached that standard. Indeed, several courts have determined that "an expert opinion that something is 'unreasonably dangerous' is an inadmissible legal conclusion." *Riley v. Tesla, Inc.*, 603 F. Supp. 3d 1259, 1289 n.19 (S.D. Fla. 2022) (citations omitted), *on reconsideration*, No. 20-CV-60517, 2022 WL 2341165 (S.D. Fla. June 29, 2022), *aff'd*, No. 22-12515, 2025 WL 881387 (11th Cir. Mar. 21, 2025); *see also Holley v. Carnival Corp.*, No. 1:20-CV-20495, 2021 WL 5371507, at *9 (S.D. Fla. Nov. 18, 2021) ("[The expert's] testimony that certain conditions posed an 'unreasonable' risk, is inadmissible as a legal conclusion" (citation omitted)); *Burris v. Ethicon, Inc.*, No. 3:20 CV 1450, 2021 WL 3190747, at *11 (N.D. Ohio July 28, 2021) ("Similarly, [the expert's] statement that a product was 'unreasonably dangerous' is excludable." (citations omitted)); *Feldman v. Target Corp.*, No. 3:19-CV-419, 2021 WL 1172794, at *3 (M.D. Fla. Mar. 29, 2021) ("[The expert's] opinion that the aisle in question was 'unreasonably dangerous' amounts to her legal conclusion that [the defendant] acted negligently in this case."), *adhered to on denial of reconsideration*, No. 3:19-CV-419, 2021 WL 1813443 (M.D. Fla. May 6, 2021);[2] *Sederholm v. Bos. Sci. Corp.*,

---

[2] The court in *Feldman* allowed the expert to testify "that the corner guard's protrusion into the pedestrian walkway was 'inherently dangerous[,]'" explaining that it was "admissible as a factual opinion that does not impermissibly embrace a determinative legal issue." *Feldman*, 2021 WL 1172794, at *3. The court reasoned that the expert "base[d] these opinions on, among other things, various building codes and standards used in the engineering field[.]" *Id*. (citation omitted). Plaintiff states that "'[u]nreasonably dangerous' is a phrase safety professionals use to

9

No. 2:13-CV-12510, 2016 WL 3282587, at *2 (S.D.W. Va. June 14, 2016) ("An expert may not state his opinion using 'legal terms of art,' such as 'defective,' 'unreasonably dangerous,' or "proximate cause.'" (citation omitted)).

Similarly, other courts have held that it is improper for an expert to opine on causation. *See Chappell v. Carnival Corp.*, 666 F. Supp. 3d 1316, 1325 (S.D. Fla. 2023) ("The [c]ourt agrees with [p]laintiff that [the expert's] opinion that [p]laintiff's alcohol consumption caused or contributed to her fall and subsequent injuries is an improper legal conclusion regarding causation that invades the province of the jury and is not helpful." (citations omitted)); *Jay v. Royal Caribbean Cruises Ltd.*, 608 F. Supp. 3d 1249, 1261 (S.D. Fla. 2022) ("The [c]ourt agrees with [the d]efendant that opinions assigning fault and using terms such as 'substantial contributing cause' and 'failure to warn' are legal conclusions that invade the province of the jury and are not helpful."); *Beech v. Adriatic Marine, L.L.C.*, 511 F. Supp. 3d 750, 761 (E.D. La. 2021) (finding the expert's opinion that the plaintiff "did not cause or contribute to the cause or causes of this accident" was an impermissible legal conclusion (citation omitted)); *Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 838 (E.D. La. 2019) (prohibiting the expert from testifying that the defendant's actions caused or contributed to the accident).

Plaintiff states that "Defendant's objection is . . . inconsistent with its own admission that '[Mr.] Kennedy over-extended the forks and caused the bundles to fall'" [Doc. 345 p. 4 (emphasis and citation omitted)]. Even if so, this does not mean that Mr. Bullen may render legal conclusions. *See Stiefel v. Malone*, No. 4:18-CV-01540, 2021 WL 426217, at *9 (N.D. Ala. Feb. 8, 2021) ("Similarly, here, there is no question regarding the factual cause of the accident in the sense that no one disputes the [defendant's vehicle] rear-ended the pickup truck, and thus, [the expert's]

---

describe hazardous conditions, not a legal standard" [Doc. 345 p. 4]. But she provides no support for this argument.

10

Case 3:21-cv-00414-KAC-JEM    Document 417    Filed 10/17/25    Page 10 of 18
PageID #: 8403

opinion [the defendant] caused or contributed to the cause of the accident is an impermissible legal conclusion."). The Court finds Defendant's objection on this ground is well taken.[3]

## B. State-of-Mind Testimony

Defendant moves to exclude Mr. Bullen's Opinion No. 2 calling it impermissible state-of-mind testimony [Doc. 313 pp. 4–5]. It contends that Mr. Bullen's statement about Mr. Kennedy's knowledge constitutes "an improper extrapolation and interpretation of Mr. Kennedy's testimony" [*Id.* at 5]. "Mr. Bullen has taken [Mr.] Kennedy's statement that he saw [Mr. McKinney]'at the rear fender of this truck . . . rolling up straps[,]'" Defendant asserts, "and reached the conclusions that (1) Mr. McKinney was adjacent to the trailer and (2) that Mr. Kennedy knew that" [*Id.* at 6 (ellipses in original, emphasis omitted, and citation omitted)]. It states that "Mr. Bullen has chosen to ignore other testimony by Mr. Kennedy regarding his interaction with Mr. McKinney" [*Id.*]. Defendant concludes, "Mr. Bullen should not be permitted to testify as to Mr. Kennedy's state of mind, as well as more specifically that Mr. Kennedy knew that [Mr.] McKinney was adjacent to the trailer when [Mr.] Kennedy began lifting the bundles" [*Id.*].

Plaintiff denies that Opinion No. 2 constitutes improper state-of-mind of testimony [Doc. 345 p. 5]. Instead, Plaintiff submits, "[Mr.] Bullen simply states [Mr.] Kennedy's own direct testimony" [*Id.* (emphasis omitted)]. According to Plaintiff, "Testimony that links a witness's direct observation to an objective physical fact is not impermissible state-of-mind testimony[] because it does not speculate about what someone believed or understood, but instead describes what was seen and the physical location that necessarily follows" [*Id.* (citation omitted)]. Stating that Mr. Bullen is describing Mr. Kennedy's testimony, Plaintiff states that "[t]his is far different

---

[3]     Plaintiff relies on *Kucharski v. Orbis Corp.*, No. 14-CV-05574, 2017 WL 1806581, at *4 (N.D. Ill. May 5, 2017) [Doc. 345 p. 4], but it does not change the Court's analysis because the expert in that case opined on the customs, standards, and practices in the industry. *Kucharski*, 2017 WL 1806581, at *4. He did not opine on the reasonableness of the defendant's actions. *Id.*

11

than the issues with [Mr.] Eroh[, Defendant's expert,] testifying to [Mr.] McKinney's state of mind because [Mr.] Eroh attempted to testify that [Mr.] McKinney was 'fully aware' without any direct testimony from Mr. McKinney himself" [*Id*. at 5–6]. "Here," Plaintiff claims, "Mr. Bullen reaches a factual conclusion based on [Mr.] Kennedy's direct testimony" [*Id*. at 6]. Further, Plaintiff states that "[Mr.] Bullen's 'adjacent' terminology accommodates [Mr.] Kennedy's varying descriptions of [Mr.] McKinney's location" [*Id*.]. "Rather than cherry-picking testimony," Plaintiff claims that "Mr. Bullen's use of 'adjacent' actually gives [Mr.] Kennedy the benefit of inconsistent testimony" [*Id*.]. In addition, Plaintiff contends that "Defendant's objections go to the weight and not the admissibility of [Mr.] Bullen's testimony" [*Id*. at 7].

Defendant replies that Opinion No. 2 "can be nothing other [than] impermissible state of mind opinion" [Doc. 351 p. 6]. According to Defendant, "Mr. Bullen is not offering an opinion as to [Mr.] Kennedy's location, [Mr.] McKinney's location, the location of the trailer, the location of the straps, or any other physical fact. He is offering an opinion as to what [Mr. Kennedy] knew" [*Id*. (emphasis omitted)]. Defendant argues that the Court excluded its expert "from testifying about Mr. McKinney's subjective beliefs" [*Id*.]. In addition, while "Plaintiff tries to hide [Mr.] Bullen's state of mind opinion as a mere recitation of [Mr.] Kennedy's own testimony[,]" Defendant submits that "[i]f that is all this opinion is, then those facts should be presented to the jury directly via [Mr.] Kennedy rather than through Mr. Bullen" [*Id*.]. Defendant asserts that "Plaintiff implies that [Mr.] Bullen is doing [Mr.] Kennedy a favor by reaching the opinion that '[Mr.] McKinney was adjacent to the trailer since the straps are adjacent to the trailer[,]'" but that "[t]his dangerous extrapolation would mislead the jury into believing that when [Mr.] Kennedy and [Mr.] McKinney made eye contact and communicated, Mr. McKinney was on the opposite

12

side of the trailer and behind the bundles, thus blocked from [Mr.] Kennedy's view" [*Id.* (internal citations omitted)].

"An expert may not offer an opinion on someone else's subjective beliefs or feelings." *Dinsmore & Shohl LLP v. Gray*, No. 1:14-CV-900, 2016 WL 11784514, at *3 (S.D. Ohio Apr. 5, 2016) (excluding the expert's testimony that a witness "'believed' certain things[,]" reasoning that "[e]xperts may rely on a witness's testimony, but may not opine on someone's thoughts"). *See also Powell v. Tosh*, 942 F. Supp. 2d 678, 703 (W.D. Ky. 2013) ("[The expert's] conclusions as to [the d]efendants' awareness, intent, choices, and knowledge are, quite plainly, state-of-mind opinions."), *adhered to on denial of reconsideration*, No. 5:09-CV-00121, 2013 WL 1878934 (W.D. Ky. May 3, 2013). Such testimony does not assist the jury in accordance with Rule 702. *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1013 (S.D. Ohio 2015). This is because "[t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Id.* (quoting *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)).

Mr. Bullen states that "Mr. McKinney had to be in the area adjacent to the load in order to unstrap the materials to be unloaded" [Doc. 313-2 p. 7]. According to Mr. Bullen, "Mr. Kennedy testified that he observed Mr. McKinney rolling up the straps as he approached the truck. Mr. Kennedy also testified that there was no reason that he could not have gone around the other side of the trailer to ensure that it was clear prior to beginning the lift" [*Id.* at 7–8 (citations omitted)]. Mr. Bullen submits, "If Mr. Kennedy observed Mr. McKinney winding the straps, then he knew that Mr. McKinney was adjacent to the trailer since the straps are attached to the trailer"

13

[*Id*. at 8]. Mr. Bullen's opinion that Mr. Kennedy knew that Mr. McKinney was adjacent to the trailer is impermissible state-of-mind testimony. *See MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013) ("[The expert's] opinion that [the defendant] *knew* [the co-defendant] used proprietary information is obviously an evaluation of [the defendant's] state of mind. Unless [the defendant] told [the expert] his state of mind, [the expert] cannot know [the defendant's] mental state.").

Plaintiff argues that "[Mr.] Bullen reaches a factual conclusion based on [Mr. Kennedy's] direct testimony" [Doc. 345 p. 6]. According to Plaintiff, 'If someone 'know[s] for a fact' that they observed another person handling trailer straps, and straps are attached to the trailer, then the observer understands the person is near the trailer" [*Id*.]. She continues, "This represents factual analysis based on [Mr.] Kennedy's own admissions, not psychological speculation about [Mr.] Kennedy's inner thoughts" [*Id*.]. Mr. Bullen may offer his opinions about the location of Mr. Kennedy and Mr. McKinney and may even opine that Mr. Kennedy should have known Mr. McKinney was adjacent to the trailer, but he cannot make conclusory statements about Mr. Kennedy's state of mind. *MAR Oil Co.*, 973 F. Supp. 2d at 786 ("[The expert] may even testify that a person with similar experience in [the defendant's] position would have known the industry standard and acted accordingly. [The expert] cannot, however, make conclusory statements regarding [the defendant's] actual state of mind."). The Court finds Defendant's objection on this ground well taken.

C.      **Testimony About the Metl-Span's Installation Guide**

Defendant argues that throughout Mr. Bullen's report, he discusses the Metl-Span Installation Guide [Doc. 313 p. 7]. But, Defendant argues, its "employees testified in their depositions that they never received the Metl-Installation Guide" [*Id*.]. According to Defendant,

14

"Nucor/Metl Span itself stated in response to Defendant's Request for Admissions that it did not provide the [Metl-Span] Installation Guide to Defendant or Mr. McKinney, but that it should have been provided by a company called MBCI" [*Id*. at 8 (citation omitted)]. Defendant contends that "the Bill of Lading for the load carried by [Mr.] McKinney identifies the shipper as Metl-Span, not MBCI, and Metl-Span employee Set Stomm signed for the shipment" [*Id*. (citation omitted)]. "Because the Installation Guide was never received," Defendant asserts, "Mr. Bullen should not be permitted to offer any opinions related to the [Metl-Span] Installation Guide, or to offer opinions regarding recommended procedures that are contained within the [Metl-Span] Installation Guide" [*Id*.]. It submits that allowing Mr. Bullen to testify about the Metl-Span Installation Guide would be prejudicial and that "[a]ny information contained [therein] . . . is irrelevant because it was never received by [Defendant"] [*Id*.].

Plaintiff responds that "[Defendant] attempts wrongly to characterize [Mr.] Bullen[']s opinions as the 'accident . . . was caused by [Defendant's] failure to rely upon Metl-Span Installation Guide'" [Doc. 345 p. 7 (ellipses in original and citation omitted)]. Regardless, Plaintiff argues, "[Defendant] fails to cite one single rule, case, or other authority in support of this claim that experts are precluded from describing safe procedures for offloading so long as employees had not 'received' manuals" [*Id*. at 7–8]. "To the contrary," Plaintiff submits, "Federal Rule of Evidence 703 expressly permits an expert to base an opinion on facts or data that the expert has personally observed or that have been made known to him, even if those facts or data are not themselves admissible, so long as they are of a type reasonably relied upon by experts in the field" [*Id*. at 8 (emphasis omitted)]. According to Plaintiff, "Expert testimony on industry custom and standard does not depend on whether a particular defendant had actual possession of the standard" [*Id*. at 9]. Instead, Plaintiff claims, "The question is whether the [Metl-Span] Installation Guide is

15

the type of evidence reasonably relied upon by experts like [Mr.] Bullen, which it is" [*Id.*]. Plaintiff states that, "[m]oreover, the record shows that Defendant also regularly relied upon specialized instructions similar to [the Metl-Span] Installation Guide" [*Id.*]. She argues that Defendant "does not dispute that experts like [Mr.] Bullen regularly rely upon materials such as the [Metl-Span] Installation Guide" and that consistent with Rule 703, he "may rely on these materials in forming his opinion" [*Id.* at 10].

Defendant replies that "Plaintiff seeks to characterize the [Metl-Span] Installation Guide as a general 'industry standard.' Rather, the [Metl-Span] Installation Guide is a specific document related to the specific wall panels that [Mr.] Kennedy was unloading from [Mr.] McKinney's trailer. A document which no one at [Defendant] ever received" [Doc. 351 p. 7].

Mr. Bullen discusses the manufacturer's procedures—the Metl-Span Installation Guide—in his Preliminary Report [*See, e.g.*, Doc. 198-1 p. 25]. He includes diagrams from the Metl-Span Installation Guide [*see id.*] and "utilizes [it] . . . to opine as to duty, breach, and causation in this case" [Doc. 351 p. 8]. During his deposition, Mr. Bullen testified that Defendant should review the manufacturer's documentation when receiving loads [Doc. 345-5 pp. 3–4].

Rule 703 states, "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. And here, Mr. Bullen states, "It is the reasonable and accepted practice in my field for safety consultants and professional engineers to rely upon manufacturers' recommendations, like the Metl-Span Installation Guide, instruction manuals, and published guidelines when forming opinions and making conclusions related to safe material handling practices" [Doc. 345-4 ¶ 3]. Defendant has not identified any grounds under *Daubert* or Rule 702 to exclude Mr. Bullen's reliance on the Metl-Span Installation Guide. While Defendant raises relevancy and prejudice challenges, the Court notes that it has filed

16

a motion in limine [Doc. 360] setting forth these arguments. The Court therefore need not decide these issues in the context of Defendant's instant motion.

### D.    Mr. Bullen's Exemplars and Demonstrative Aids

According to Defendant, "In his Preliminary Report, Mr. Bullen has indicated his intention to demonstrate his opinions via the use of Mr. McKinney's truck and trailer, reconstructed bundles, and an exemplar forklift" [Doc. 313 pp. 8–9]. Defendant also states that Mr. Bullen intends to use photographs and/or videos of a demonstration [*Id*. at 9]. It generally argues that Mr. Bullen's exemplars and demonstrative aids do not provide a fair representation of the items they are supposed to represent [*Id*. at 9–12]. Allowing Mr. Bullen to utilize a forklift at trial, Defendant asserts, "would be cumbersome" and it would "potentially delay and prolong trial" [*Id*. at 12]. It also contends that allowing the exemplars or demonstrative aids would be duplicative of other evidence [*Id*.].

Plaintiff responds that "there is no physical evidence that captures" Mr. Kennedy's visibility [Doc. 345 p. 11]. Any differences in the exemplars or demonstrative aids, Plaintiff claims, are not prejudicial and that any issues can be addressed by jury instructions [*Id*. at 9–11]. Plaintiff contends the differences in the conditions go to the weight of the opinion [*Id*. at 12]. She states that "Defendant's concerns with trial logistics or duplicity of evidence are not grounded in Rules 702 or 703 and are therefore improper basis for a *Daubert* motion" [*Id*. at 14].

Defendant replies that the differences in Mr. Bullen's exemplars and demonstrative aids "are so substantial that the admission of such evidence would be prejudicial to [Defendant]" [Doc. 351 p. 9]. It claims, "Because the conditions would not be substantially similar, [Mr.] Bullen should not be permitted to use Mr. McKinney's truck and trailer, reconstructed bundles, and an exemplar forklift in supporting his opinion" [*Id*. at 11].

The Court observes that Defendant has filed a motion in limine regarding Mr. Bullen's use of exemplars and demonstrative aids [Doc. 365]. The Court therefore need not decide this issue in the context of Defendant's instant motion.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Exclude or Limit Testimony of Robert Bullen [**Doc. 313**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge