UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ALBERTA LOUISE PERRY, surviving spouse )
and next kin of VINCENT MCKINNEY, )
deceased, )
 )
              Plaintiff, )
v. )          No. 3:21-CV-414-KAC-JEM
 )
JENKINS & STILES, LLC, )
 )
              Defendant. )

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court,

and Standing Order 13-02.

Now before the Court is Defendant's Motion to Exclude or Limit Testimony of Jeremiah

Midkiff [Doc. 314]. Plaintiff responded in opposition to the motion [Doc. 347]. Defendant filed a

reply [Doc. 352]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons

set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion

[**Doc. 314**].

**I.      BACKGROUND**

This lawsuit arose out of the death of Vincent McKinney ("Mr. McKinney") on April 15,

2021, at a U-Haul construction site [Doc. 270]. Defendant Jenkins & Stiles, LLC is a construction

company, and it was the general contractor for the construction site [*Id.* ¶ 10]. Mr. McKinney was

delivering cargo to the construction site, namely a load of five wrapped bundles of insulated panels

[*Id.* ¶¶ 14–15]. While some of the facts are in dispute, the parties do not seem to dispute that as

Curtis Kennedy ("Mr. Kennedy"), a forklift operator and jobsite superintendent for Defendant,

began unloading the cargo, the cargo fell off the trailer onto Mr. McKinney [Doc. 314 pp. 1–2]. Mr. McKinney died on the scene [*Id.* at 2].

"[Defendant] has admitted '[Mr.] Kennedy over engaged the forks, contacted the bundles on the far side and that the bundles fell when [Mr.] Kennedy began lifting'" [*Id.* (citations omitted)]. But Defendant "maintain[s] the cause of the death was [Mr.] McKinney's own actions leaving the area from beside his truck, after providing [Mr.] Kennedy with an all clear signal[] and walking under the bundles at the time [Mr.] Kennedy began unloading" [*Id.* (citations omitted)]. Plaintiff claims that "[Mr.] Kennedy failed to confirm the area around the trailer was clear and that it would be safe to commence offloading" [Doc. 270 ¶ 24 (emphasis omitted)].

As part of her expert disclosures, Plaintiff served Defendant with the expert report of Jeremiah Midkiff ("Mr. Midkiff") dated March 24, 2025 [Doc. 314-1]. Plaintiff retained Mr. Midkiff to opine on "any applicable OSHA/safety standards[] and assess whether [Defendant] deviated from any applicable standard of care in the area of construction safety/general contracting regarding Mr. McKinney's fatal injury" [Doc. 314-1 p. 4].

Defendant asks the Court to exclude or limit portions of Mr. Midkiff's opinions pursuant to Federal Rules of Evidence 402, 403, and 702 [Doc. 314 p. 1]. First, Defendant moves to exclude Mr. Midkiff's opinion "that the actions of [Defendant], [Mr.] Kennedy, or other [Defendant] employees contributed to the circumstances that caused this accident" [*Id.* at 5]. This opinion, it argues, constitutes a legal conclusion [*Id.* at 4–5]. Second, Defendant states that Mr. Midkiff references "what '[Defendant] knew or should have known . . .'" [*Id.*]. Defendant claims that these references constitute impermissible state-of-mind testimony [*Id.* at 5–6]. Third, Defendant moves to prohibit Mr. Midkiff from testifying that "TOSHA did not issue any citation to any party and appears to have based [its] incident summary largely on Mr. Kennedy's verbal statements without

further investigation" [*Id.* at 6 (citation omitted)]. Defendant argues that Mr. Midkiff's testimony is misleading and prejudicial [*Id.*]. Fourth, Defendant asks that the Court prohibit Mr. Midkiff from opining that 29 C.F.R. § 1926.16 applies and that Defendant violated it [*Id.* at 6–8]. Fifth, Defendant requests that the Court exclude Mr. Midkiff from referencing the "Commercial/Industrial Installation Guide" produced by Nucor/Metl-Span ("Metl-Span's Installation Guide") because its employees never received it [*Id.* at 8–10]. Sixth, Defendant seeks exclusion of Mr. Midkiff's opinion that it violated the general duty clause in 29 U.S.C. § 654(a)(1), stating that it does not apply to this case because Mr. McKinney was not its employee [*Id.* at 10–11].

Plaintiff responds that Defendant "mischaracterizes the nature of [Mr.] Midkiff's expert opinions" and that instead of offering legal conclusions, he "addresses construction site safety practices and technical causation analysis" [Doc. 347 p. 3]. In addition, Plaintiff states, "Defendant misconstrues [Mr.] Midkiff's opinions by conflating permissible expert testimony about objectively available information with impermissible speculation about subjective mental states" [*Id.* at 5–6]. With respect to "Defendant's objection to [Mr.] Midkiff's observations about TOSHA's investigation[,]" Plaintiff claims that "[it] lacks any legal basis for exclusion and instead raises credibility issues that are properly resolved by the jury" [*Id.* at 9]. Further, she contends that "[Defendant] offers no legal authority barring [Mr.] Midkiff from testifying about 29 C.F.R. § 1926.16" [*Id.* at 10]. And Defendant's argument that Mr. Midkiff should not be allowed to rely on the Metl-Span Installation Guide has no basis, Plaintiff states, noting that "[e]xpert testimony on industry customs and standards does not depend on whether a particular defendant had actual possession of that standard" [*Id.* at 12]. Finally, she contends that the general duty clause in 29 U.S.C. § 654(a)(1) applies to the jobsite and the incident [*Id.* at 14–16].

Defendant filed a reply, arguing that Mr. Midkiff's "conclusions are filled with legal terminology" [Doc. 352 p. 3]. With respect to its state-of-mind argument, Defendant contends that "[Mr.] Midkiff should not be permitted [to testify] that [Defendant] knew anything" [*Id*. at 4 (emphasis omitted)]. Further, regarding Mr. Midkiff's testimony about the TOSHA investigation, Defendant submits that "[t]he testimony of the TOSHA investigator himself is far different from the speculation from . . . Mr. Midkiff" [*id*. at 5] and that "[i]f anyone is permitted to testify as to the bases of the TOSHA report, it would be . . . the TOSHA investigators" [*id*. at 6]. It further argues that while "Plaintiff intends to use 29 C.F.R. § 1926.16 to define the governing legal standard, the duty of care, and the 'standard of liability[,]'" Defendant asserts that this is contrary to the law [*Id*.]. It maintains that Mr. Midkiff should be prohibited from referencing the Metl-Span Installation Guide because it did not receive it [*Id*. at 7–8]. Finally, Defendant claims that it does not owe Mr. McKinney a duty under the general duty clause, 29 U.S.C. § 654(a)(1) [*Id*. at 9].

## II.    STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;

<ol type="a" start="3">
<li>(c)      the testimony is the product of reliable principles and methods; and</li>

<li>(d)      the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.</li>
</ol>

Fed. R. Evid. 702. The Supreme Court stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

## III. ANALYSIS

The Court will exclude Mr. Midkiff's legal conclusions and state-of-mind opinions. But the Court declines to exclude his remaining opinions at this time.

### A. Legal Conclusions

Defendant moves to exclude Mr. Midkiff's "specific statements and testimony regarding the cause of the accident" [Doc. 314 p. 4]. Specifically, it points to the following paragraph in Mr. Midkiff's report:

> The failure to follow typical safety guidelines and industry customs and standards, in addition to the lack of a safe zones and designated unloading zones, and the failure to follow safe unloading procedures are egregious failures and deviate from the standards of care in the industry, directly contributing to Mr. McKinney's injury on April 15, 2021, and subsequent death.

[*Id*. (citing Doc. 314-1 p. 11)]. It contends that Mr. Midkiff's statement constitutes an impermissible legal conclusion [*id*.], and it concludes that "Mr. Midkiff should not be permitted to testify that the actions of [Defendant], [Mr.] Kennedy, or other [Defendant] employees contributed to the circumstances that caused this accident" [*id*. at 5].[1]

Plaintiff responds that Defendant "mischaracterizes the nature of [Mr.] Midkiff's expert opinions" [Doc. 347 p. 3]. According to Plaintiff, "Experts may embrace ultimate opinions but should not testify to legal conclusions" [*Id*. (citation omitted)]. And here, she claims that "[Mr.] Midkiff's statement that Defendant's 'failure to follow typical safety guidelines and industry customs and standards' and other safety failures 'directly contributing to Mr. McKinney's injury' employs technical terminology from construction safety standards, not legal terms of art" [*Id*. at 4]. "The phrases 'safety guidelines' and 'industry customs and standards[,]'" Plaintiff

---

[1]     Defendant also objects to Mr. Midkiff's "conclusory statements about [its] state of mind" [Doc. 314 p.4]. The Court will address this objection below.

submits, "reflect professional construction safety terminology that experts in workplace safety and construction operations routinely use to describe hazardous conditions and industry practices" [*Id*.]. Further, she explains that "'directly contributing' reflects technical causation, which is an analysis that lies squarely within [Mr.] Midkiff's technical expertise" [*Id*. (footnote omitted)]. Plaintiff states, "[Mr.] Midkiff does not opine that Defendant . . . legally caused [Mr.] McKinney's injury but rather that Defendant's conduct contributed to the circumstances that caused [Mr.] McKinney's injury" [*Id*. at 5].

Defendant replies that Mr. Midkiff "went beyond the realm of legal opinions and opined as to the cause of death" [*Id*. at 4 (emphasis omitted)].

While an expert's opinion may embrace an ultimate issue, *see* Fed. R. Evid. 704(a), an expert may not render legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) (explaining that "[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case" (citation omitted)). A legal conclusion is not helpful to the jury because it merely instructs the jury what verdict to reach. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). "[It also] convey[s] the witness' unexpressed, and perhaps, erroneous, legal standards to the jury." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). Courts have "a relative wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion[,]" but "[t]hat discretion is not unlimited." *Id*. (citation omitted).

In order to determine whether an opinion constitutes a legal conclusion, the United States Court of Appeals for the Sixth Circuit instructs courts "to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Id*. (citation omitted). In Tennessee,

"negligence" is "defined as the failure to exercise reasonable care[.]" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). The plaintiff must show "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Id.* (quoting *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995)). And "duty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall*, 913 S.W.2d at 153 (citation omitted). If there is a duty of care, "the question becomes whether defendant failed to exercise reasonable care under the circumstances, i.e., whether defendant breached the duty." *Id.*

Mr. Midkiff's statements the Defendant "fail[ed] to follow typical safety guidelines and industry customs and standards[,]" failed to have "a safe zone and designated unloading zones," and "fail[ed] to follow safe unloading procedures[,]" and such failures were "egregious" [Doc. 314-1 p. 11] are not impermissible legal conclusions. Indeed, "experts may testify regarding custom and practice in an industry." *Stryker Corp. v. XL Ins. Am.*, No. 1:17-CV-66, 2020 WL 13443035, at *3 (W.D. Mich. July 22, 2020) (citation omitted). And experts may further testify that the defendant did not act in accordance with those customs and standards. *Id.* ("The experts must be permitted to embrace that ultimate issue and explain why, under the custom and practice of the insurance industry and given the facts known at the time, [the defendant] did or did not act in accordance with their duties, obligations, or industry custom and practice."); *see also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 318 (6th Cir. 2019) ("[A]lthough [the expert's] 'standard of care' testimony could perhaps lead a reasonable juror to *infer* that [the defendant's] invocation of 'clinical errors' was nothing more than a pretext for disability discrimination, that possibility does not render [the expert's] testimony inadmissible *in toto*." (internal citation

8

omitted)); *Est. of Ferrell by & through Ferrell v. KB Custom Ag Servs. LLC*, No. 23-2384, 2025 WL 2461287, at *24 n.20 (D. Kan. Aug. 26, 2025) ("[The expert] may testify about industry safety standards and whether [the driver's] conduct fell below industry standard."); *Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 250, 257 (E.D. Pa. 2021) (allowing the expert to testify "whether [t]he defendants' conduct comports with industry custom and practice"); *Davis ex rel. Est. of Price v. Roane Cnty.*, No. 3:12-CV-634, 2015 WL 6738174, at *7 (E.D. Tenn. Nov. 4, 2015) (finding the expert may testify that the defendant's conduct fell below the standard of care), *objections overruled sub nom. Davis v. Roane Cnty.*, No. 3:12-CV-634, 2016 WL 123426 (E.D. Tenn. Jan. 11, 2016). And Defendant has not identified any words or phrases in the testimony noted above that have distinct legal meanings. *See Babb*, 942 F.3d at 317 ("[W]e have generally excluded expert testimony for stating a 'legal conclusion' *only* when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." (citation omitted)).[2]

But Mr. Midkiff's statement that Defendant's actions or inactions "directly contribut[ed] to Mr. McKinney's injury on April 15, 2021, and subsequent death" [Doc. 314-1 p. 11] is an

---

[2]     Plaintiff asserts, "Critically, [Mr.] Midkiff avoids legal terminology entirely, never stating that [Defendant] was 'negligent,' 'liable,' or 'breached its duty'" [Doc. 347 p. 4]. Defendant points out that elsewhere in Mr. Midkiff's report he opines "that [Defendant's] 'behaviors' were 'negligent and careless'" [Doc. 352 p. 3 (citation omitted)]. Any such testimony would be excludable, and Plaintiff shall avoid eliciting any testimony from Mr. Midkiff that includes legal terminology. *See O'Malley v. Royal Caribbean Cruises, Ltd.*, No. 17-21225, 2018 WL 2970728, at *4 (S.D. Fla. June 13, 2018) (prohibiting the expert witness from testifying that the "[d]efendant was negligent and that the vessel's personnel caused [p]laintiff's injuries"); *Higgs v. Costa Crociere S.p.A. Co.*, No. 15-60280-CIV, 2016 WL 4370012, at *7 (S.D. Fla. Jan. 12, 2016) (prohibiting the expert witness from testifying that the defendant was "at fault" or that the "crew was 'careless'"); *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-CV-18, 2009 WL 3584263, at *5 (E.D. Tenn. Oct. 26, 2009) (granting the defendant's request to prohibit "[the p]laintiffs' experts from opining as to whether any action was 'negligent' or whether any party was 'at fault'").

9

impermissible legal conclusion. *See Chappell v. Carnival Corp.*, 666 F. Supp. 3d 1316, 1325 (S.D. Fla. 2023) ("The [c]ourt agrees with [p]laintiff that [the expert's] opinion that [p]laintiff's alcohol consumption caused or contributed to her fall and subsequent injuries is an improper legal conclusion regarding causation that invades the province of the jury and is not helpful."); *Jay v. Royal Caribbean Cruises Ltd.*, 608 F. Supp. 3d 1249, 1261 (S.D. Fla. 2022) ("The [c]ourt agrees with [the d]efendant that opinions assigning fault and using terms such as 'substantial contributing cause' and 'failure to warn' are legal conclusions that invade the province of the jury and are not helpful."); *Beech v. Adriatic Marine, L.L.C.*, 511 F. Supp. 3d 750, 761 (E.D. La. 2021) (finding the expert's opinion that the plaintiff "did not cause or contribute to the cause or causes of this accident" was an impermissible legal conclusion (citation omitted)); *Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 838 (E.D. La. 2019) (prohibiting the expert from testifying that the defendant's actions contributed to the accident).

The Court will therefore allow Mr. Midkiff to testify about Defendant's alleged failures to conform to the standards and industry customs but not that Defendant's actions or lack thereof contributed to the underlying accident.

### B.    State-of-Mind Testimony

Defendant states that "Mr. Midkiff also makes conclusory statements about [Defendant's] state of mind[] and that [Defendant] 'knew' about certain dangers at the construction site" [Doc. 314 pp. 4 & 5 (citing Doc. 314-1 pp. 5 & 10)]. It contends that such statements constitute impermissible state-of-mind testimony and that the Court ruled that its expert could not render similar opinions [*Id*. at 5–6].

Plaintiff responds that "Defendant misconstrues [Mr.] Midkoff's opinion by conflating permissible expert testimony about objectively available information with impermissible

speculation about subjective mental states" [Doc. 347 p. 6]. According to Plaintiff, "Courts distinguish between impermissible testimony about a party's subjective state of mind and permissible testimony about what information was available to a party" [*Id*. at 7 (citation omitted)]. "When [Mr.] Midkiff states that [Defendant] 'knew or should have known that the dangerous working conditions at the construction site did not conform to OSHA standards or to accepted safe practices[,]" Plaintiff claims, "he is not speculating about what [Defendant] employees actually believed or their subjective motivations" [*Id*. at 6–7]. "Instead," she asserts, "[Mr. Midkiff] is analyzing what information was objectively available based on industry standards, OSHA regulations, and observable site conditions" [*Id*. at 7]. "Plaintiff agrees that [Mr.] Midkiff will not testify as to what [Defendant] 'actually knew' in a subjective or legal sense or otherwise attempt to read the minds of others" [*Id*.]. Plaintiff also argues that his "opinions are firmly grounded in extensive record evidence[,]" "extensive documentary evidence," and the "physical evidence" [*Id*.]. "Defendant's reference to this Court's previous order regarding Charles Eroh[,]" Plaintiff claims, "does not support [the] exclusion of [Mr.] Midkiff's testimony" [*Id*. at 8].

Defendant replies that "[Mr.] Midkiff should not be permitted [to] testify that [Defendant] knew anything at all" [Doc. 352 p. 4].

"Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citation omitted); *see also Powell v. Tosh*, 942 F. Supp. 2d 678, 703 (W.D. Ky. 2013) ("[The expert's] conclusions as to [the d]efendants' awareness, intent, choices, and knowledge are, quite plainly, state-of-mind opinions."), *adhered to on denial of reconsideration*, No. 5:09-CV-00121, 2013 WL 1878934 (W.D. Ky. May 3, 2013). Such testimony does not assist the jury in accordance with Rule 702. *Waite, Schneider, Bayless &*

11

*Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1013 (S.D. Ohio 2015). This is because "[t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Id*. (quoting *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)).

Mr. Midkiff states that "[Defendant] knew or should have known the dangerous working conditions at the construction site did not conform to OSHA regulations or to accepted safe practices or construction operations" [Doc. 341-1 pp. 5]. He later opines that "[Defendant] knew or should have known that the dangerous condition in the form of the unloading materials without verifying personnel were clear, not designating safe zones and unloading zones, and not following proper unloading procedure, did not conform to accepted safe practices, including OSHA regulations and industry customs and standards" [*Id*. at 11]. Mr. Midkiff's opinion that "Defendant knew" of certain dangerous conditions is impermissible state-of-mind testimony. *See MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013) ("[The expert's] opinion that [the defendant] *knew* [the co-defendant] used proprietary information is obviously an evaluation of [the defendant's] state of mind. Unless [the defendant] told [the expert] his state of mind, [the expert] cannot know [the defendant's] mental state"); *see also In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 546 F. Supp. 3d 666, 677 (S.D. Ohio 2021) ("[A]n expert cannot offer an opinion on the 'intent, motives or states of mind of corporations' because these opinions 'have no basis in any relevant body of knowledge or expertise.'" (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)); *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 951 (D. Minn. 2020) (granting a request to exclude the expert from testifying that the company "knew" something as improper state-of-mind testimony).

12

While Plaintiff argues that Mr. Midkiff's testimony is permissible because it is based on available information, "[t]he problem is that [his] report goes beyond opining about these matters to draw conclusions about [Defendant's] knowledge." *Avila v. Ford Motor Co.*, No. 5:22-CV-00542, -- F. Supp. 3d --, 2025 WL 2538722, at *2 (N.D. Cal. Aug. 22, 2025) (finding that expert testimony about what the defendant knew and when it knew it was improper state-of-mind testimony). Indeed, "[t]he jury is perfectly capable of reviewing relevant evidence and testimony presented by the parties and then drawing its own inferences as to state of mind." *Id*. (quoting *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 782 F. Supp. 3d 836, 856 (N.D. Cal. 2025)). And Plaintiff agrees that "Mr. Midkiff will not testify as to what [Defendant] 'actually knew' in a subjective or legal sense or otherwise attempt to read the mind of others" [Doc. 347 p. 7].[3]

"While experts generally cannot opine on a defendant[']s subjective knowledge or intent, they may sometimes address what the defendant should have known[.]" *McCoy v. DePuy Orthopaedics, Inc.*, No. 22-CV-2075, 2024 WL 1705952, at *17 (S.D. Cal. Apr. 19, 2024) (internal citations omitted)). Here, the Court finds that Mr. Midkiff may opine on what Defendant "should have known." *See MAR Oil Co.*, 973 F. Supp. 2d at 786 ("[The expert] may even testify that a person with similar experience in [the defendant's] position would have known the industry

---

[3]     Plaintiff relies on *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d at 718, in support of her position [Doc. 347 p. 6]. That case was a negligence action where the plaintiff alleged that the defendant had been releasing a harmful chemical, C-8, into surface waters and unlined landfills since the 1950s. *Id*. at 702. Based on the "complicated historical record" and the "unique qualifications" of the expert, the court allowed the expert to opine that the "[defendant] knew or should have known at any given point in time" that C-8 was harmful. *Id*. at 719. It reasoned that "[t]his is not testimony that goes to motive or intent" but instead was based on the expert's review of "a complicated historical record, and based upon her unique qualifications[.]" *Id*. The proposed expert testimony here is different, so the Court does not rely on this aspect of this case.

standard and acted accordingly. [The expert] cannot, however, make conclusory statements regarding [the defendant's] actual state of mind."); *In re Chantix (Varenicline) Prods. Liab. Litig.*, 889 F. Supp. 2d 1272, 1303 (N.D. Ala. 2012) ("[T]he court will not allow any of the plaintiffs' experts to testify to what defendant 'knew.' However, this is not the same as opinions on what defendant 'should have known.' Plaintiffs' experts may testify as to what defendant should have known.").

The Court therefore excludes Mr. Midkiff's opinions that "Defendant knew" about conditions but will allow him to testify that "Defendant should have known" about conditions.

### C. TOSHA Investigation

Defendant moves to exclude Mr. Midkiff's statement that "TOSHA did not issue citations to any party and appears to have based [its] incident summary largely on Mr. Kennedy's verbal statements without further investigation" [Doc. 314 p. 6 (citing Doc. 314-1 p. 3)]. It argues that "Mr. Midkiff presumes to know what Michael Johnson, the lead TOSHA investigated" but that "Mr. Johnson testified that in addition to his personal inspection of the accident site, he reviewed (or prepared himself) the documents in the 162-page TOSHA file, as well as photographs from the Knox County Sheriff's Office" [*Id.* (citation omitted)]. Defendant therefore argues that Mr. Midkiff's statement about the TOSHA investigation "is misleading and would prejudice [it]" [*Id.*].

Plaintiff responds that Defendant's objection goes to the weight of the evidence, not to its admissibility [Doc. 347 p. 9]. She contends that it "raises credibility issues" and "is essentially a challenge to the accuracy and foundation of [Mr.] Midkiff's characterization of the TOSHA investigation" [*Id.*]. Stating that "Defendant ignores critical testimony from the TOSHA investigator[,]" Plaintiff argues that Mr. Johnson's testimony "supports [Mr.] Midkiff's

14

assessment that TOSHA's investigation relied heavily on uncorroborated statements from [Mr.] Kennedy" [*Id*.].

Defendant replies that "Plaintiff appears to be attacking the basis of the TOSHA report itself, rather than Mr. Midkiff's opinion about the basis" [Doc. 352 p. 4]. According to Defendant, Plaintiff's characterization of Mr. Johnson's testimony "is quite contrary to [his] testimony" [*Id*. at 4–5]. It claims that "[t]he testimony of the TOSHA investigator himself is far different from the speculation from . . . Mr. Midkiff" [*Id*. at 5]. Stating that "[Mr.] Midkiff's statement has nothing to do with the weight of his report[,]" Defendant asserts that "it throws into question the TOSHA investigation and its findings" [*Id*. at 6]. It argues that "[i]f anyone is permitted to testify as to the bases of the TOSHA report, it would be Mr. Johnson and Mr. Swift, the TOSHA investigators" [*Id*.]. Defendant states that "there is no probative value to [Mr.] Midkiff's false statement" [*Id*.].

Defendant's objection goes to the weight of Mr. Midkiff's testimony and not to its admissibility. Defendant disagrees with Mr. Midkiff's characterization of the TOSHA investigation, but "it is not proper for the Court to exclude expert testimony 'merely because the factual bases for an expert's opinion are weak.'" *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (quoting *Boyar v. Korean Air Lines Co.*, 954 F. Supp. 4, 7 (D.D.C. 1996)). Defendant may challenge Mr. Midkiff's conclusions through cross examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

The Court therefore declines to exclude Mr. Midkiff's testimony about the TOSHA investigation.

### D. OSHA Regulation

Defendant states that "Mr. Midkiff opined that the OSHA regulation 29 [C.F.R.] § 1926.16(b) applied to this matter" [Doc. 314 p. 6 (citing Doc. 314-1 p. 5)]. It contends pursuant to the Sixth Circuit, "OSHA regulations cannot be used to establish a standard of care" [*Id*. at 7]. Further, Defendant claims that OSHA's interpretation letters have addressed the applicability of § 1926.16(b) and that it does not apply in a civil action [*Id*. at 7–8]. Given that, Defendant states that "it is appropriate to bar Mr. Midkiff from offering any opinion based on 29 [C.F.R.] § 1926.16" [*Id*. at 8].

Plaintiff responds that "[Defendant] offers no legal authority barring [Mr.] Midkiff from testifying about 29 C.F.R. § 1926.16" [Doc. 347 p. 10]. Stating that Defendant's cases only address "whether OSHA regulations can serve as a direct basis for liability[,]" Plaintiff asserts that "[t]he cases do not address whether expert testimony regarding OSHA standards is admissible as evidence of good practices, negligence or the applicable standard of care" [*Id*.]. "[She] does not contend that 29 C.F.R. § 1926.16 creates a direct basis for liability[,]" but she notes that Defendant does not "dispute that 29 C.F.R. § 1926.16 applies to its jobsite or its role on the project" and that the regulation is not rendered inapplicable [*Id*.]. "In absence of binding precedent excluding such testimony," Plaintiff asks the Court to "permit it" [*Id*.].

Defendant replies that "[t]he Sixth Circuit has plainly stated, 'OSHA regulations can never provide a basis for liability. The Act itself explicitly states it is not intended to affect the civil standard of liability'" [Doc. 352 p. 6 (citations omitted)]. It asserts that "Plaintiff intends to use 29 [C.F.R.] § 1926.16 to define the governing legal standard, the duty of care, [and] the 'standard of liability'" [*Id*.]. "OSHA itself[,]" Defendant submits, "has issued multiple interpretation letters concluding that 29 [C.F.R.] § 1926.16 does not apply to this matter" [*Id*. at 7 (emphasis omitted)].

Defendant has raised this issue in its Motion for Summary Judgment on Plaintiff's Direct Negligence and Negligence Per Se Claims [Doc. 319] and in its Motion in Limine to Exclude Evidence of OSHA, TOSHA, or Related Regulations [Doc. 354]. The Court declines to address this issue at this time.

E.    **Testimony About the Metl-Span Installation Guide**

Defendant states that throughout Mr. Midkiff's report, he discusses the "manufacturer's instructions[,]" which are in the Metl-Span Installation Guide [Doc. 314 p. 8]. But, Defendant argues, its "employees testified in their depositions that they never received the Metl-Installation Guide" [*Id.* at 9]. According to Defendant, "Nucor/Metl Span itself stated in response to Defendant's Request for Admissions that it did not provide the [Metl-Span] Installation Guide to Defendant or Mr. McKinney, but that it should have been provided by a company called MBCI" [*Id.* (citation omitted)]. Defendant contends that "the Bill of Lading for the load carried by [Mr.] McKinney identifies the shipper as Metl-Span, not MBCI, and Metl-Span employee Set Stomm signed for the shipment" [*Id.* (citation omitted)]. "Because the Installation Guide was never received," Defendant asserts, "Mr. Midkiff should not be permitted to offer any opinions related to the [Metl-Span] Installation Guide, or to offer opinions regarding recommended procedures that are contained within the [Metl-Span] Installation Guide" [*Id.*]. It submits that allowing Mr. Midkiff to testify about the Metl-Span Installation Guide would be prejudicial and that "[a]ny information contained [therein] . . . is irrelevant because it was never received by [Defendant]" [*Id.*].

Plaintiff responds that "[Defendant] attempts wrongly to characterize [Mr.] Midkiff's opinions as the 'accident . . . was caused by [Defendant's] failure to rely upon [the] Metl-Span Installation Guide'" [Doc. 347 p. 10 (ellipses in original and citation omitted)]. Regardless, Plaintiff argues, "[Defendant] fails to cite one single [r]ule, case, or other authority in support of

17

this claim" [*Id.*]. "To the contrary," Plaintiff submits, "Federal Rule of Evidence 703 expressly permits an expert to base an opinion on facts or data that the expert has personally observed or that have been made known to him, even if those facts or data are not themselves admissible, so long as they are of a type reasonably relied upon by experts in the field" [*Id.* at 11 (emphasis omitted)]. According to Plaintiff, "Expert testimony on industry custom and standard does not depend on whether a particular defendant had actual possession of the standard" [*Id.* at 12]. Instead, Plaintiff claims, "The question is whether the [Metl-Span] Installation Guide is the type of evidence reasonably relied upon by experts like [Mr.] Midkiff, which it is" [*Id.*]. Plaintiff states that "[m]oreover, the record shows that Defendant also regularly relied upon specialized instructions similar to [the Metl-Span] Installation Guide" [*Id.*]. She argues that Defendant "does not dispute that experts like [Mr.] Midkiff regularly rely upon materials such as the [Metl-Span] Installation Guide" and that consistent with Rule 703, he may rely on these materials in forming his opinion [*Id.* at 13].

Defendant replies that it "never received the [Metl-Span] Installation Guide, and discovery responses from the manufacturer indicate that it likely was never sent" [Doc. 352 p. 7 (footnote omitted)]. Stating that Mr. Midkiff "utilized it to opine as to duty, breach, and causation in this case[,]" Defendant argues that it "has repeatedly objected to the admissibility of the [Metl-Span] Installation Guide and reliance on [it]" [*Id.* at 8 (citations omitted)]. Defendant contends that Plaintiff uses the Metl-Span Installation Guide "to show the specific procedures that [Defendant] should have followed . . . and that [Defendant's] failure to follow those specific procedures [is] proof of [its] 'culpable conduct'" [*Id.*]. It asks that the Court not allow Mr. Midkiff to "reference the [Metl-Span] Installation Guide by name or implication (i.e., the 'manufacturer's instructions') or rely on it to give his opinions" [*Id.*].

18

Mr. Midkiff discusses the manufacturer's procedures—the Metl-Span Installation Guide—in his report [Doc. 314-1 pp. 8–9]. He states that Defendant did not follow them [*id*. at 8], and he discusses the methods contained therein to "protect employees" [*id*. at 9]. Rule 703 states, "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. And here, Mr. Midkiff states, "It is the reasonable and accepted practice in [his] field for safety consultants and professional engineers to rely upon manufacturers' recommendations, like the Metl-Span Installation Guide, instruction manuals, and published guidelines when forming opinions and making conclusions related to safe material handling practices" [Doc. 347-5 ¶ 3]. Defendant has not identified sufficient grounds under *Daubert* or Rule 702 to exclude Mr. Midkiff's reliance on the Metl-Span Installation Guide. While it raises relevancy and prejudice challenges, the Court notes that it has filed a motion in limine [Doc. 360] setting forth these arguments. The Court therefore need not decide these issues in the context of Defendant's instant motion.

### F.    Mr. Midkiff's Testimony on the General Duty Clause of OSHA

Defendant states that "Mr. Midkiff opined that [Defendant] violated the [g]eneral [d]uty [c]lause of OSHA" [Doc. 314 p. 10 (citing Doc. 314-1 p. 9)]. "[T]he [g]eneral [d]uty [c]lause[,]" Defendant argues "cannot apply to this case because [Mr.] McKinney was not [Defendant's] employee" [*Id*.]. And, according to Defendant, "The general duty clause only applies to an employer's own employees" [*Id*.]. It submits that "OSHA has interpreted violations of the [g]eneral [d]uty [c]lause to only apply to 'employees of the employer'" [*Id*. (citation omitted)]. Because Mr. McKinney was an employee of ClearShine Logistics, Defendant contends that "it is misleading and prejudicial to permit Mr. Midkiff to opine that [Defendant] violated the [g]eneral [d]uty [c]lause" [*Id*. at 11].

Plaintiff responds that "[t]he general duty clause applies where an employer fails to protect their employees from recognized hazards" [Doc. 347 p. 14]. "[Defendant's m]otion focuses on the fact that [Mr.] McKinney was not [Defendant's] employee[,]" but Plaintiff claims that "this misses the key point of this testimony" [*Id*.]. Here, Plaintiff states that Defendant's employee, Mr. Kennedy, was "exposed to hazardous conditions during forklift operation and material and unloading with pedestrians in the immediate vicinity" [*Id*.]. According to Plaintiff, "Mr. Midkiff's opinion addresses the hazardous conditions on the jobsite" and that "[t]hese conditions subjected all persons on the job site including [Mr.] Kennedy to recognized hazards, not exclusively [Mr.] McKinney" [*Id*.]. Plaintiff argues "[t]his creates liability under the general duty clause regardless of Mr. McKinney's employment status" [*Id*.]. "Furthermore," Plaintiff adds, "OSHA violations are evidence of negligence at a minimum, and the jury should be permitted to hear this evidence" [*Id*. (citation omitted)]. "Even if there were questions about the applicability of the general duty clause, "Mr. Midkiff's testimony regarding OSHA violations provides relevant evidence of negligence that should be presented to the jury for their consideration" [*Id*. at 15].

Defendant replies that "in an attempt to save her reliance on the OSHA general duty clause, Plaintiff is now arguing for the first time that [Defendant] failed to provide it[]s own employees a place of employment 'free from recognized hazards that are causing or are likely to cause death or serious harm'" [Doc. 352 pp. 8–9 (emphasis and citation omitted)]. "Just because [Defendant] may have owed a duty to [Mr.] Kennedy under the [g]eneral [d]uty [c]lause[,]" Defendant argues that "does not mean that [it] also owed such a duty to [Mr.] McKinney" [*Id*. at 9]. And Defendant contends any duty that it owed to Mr. Kennedy is not at issue in this case [*Id*.]. The issue in this case, Defendant claims, is the duty that it owed to Mr. McKinney [*Id*.]. It therefore asks that the

Court prohibit Mr. Midkiff from opining "that the [g]eneral [d]uty [c]lause applies to Plaintiff's negligence claim against [it]" [*Id*.].

Mr. Midkoff opines:

9.  Regarding the [P]laintiff's fatal injuries, [Defendant] violated the general duty clause.

    9.1  Under the General Duty Clause, Section 5(a)(1) of the Occupational Safety and Health Act of 1970, employers are required to provide their employees with a place of employment that is "free from recognized hazards that are causing or are likely to cause death or serious harm."

    9.2  Forklift operation and material unloading with pedestrians in the immediate vicinity is a recognized hazard that the [Defendant] was required to mitigate prior to employee exposure.

[Doc. 347-1 p. 8].

Defendant has raised this issue in its Motion for Summary Judgment on Plaintiff's Direct Negligence and Negligence Per Se Claims [Doc. 319] and its Motion in Limine to Exclude Evidence of OSHA, TOSHA, or Related Regulations [Doc. 354]. The Court declines to address this issue at this time.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Exclude or Limit Testimony of Jeremiah Midkiff [**Doc. 314**].

**IT IS SO ORDERED.**

ENTER:

*Jill E. McCook*

Jill E. McCook
United States Magistrate Judge

21