UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALBERTA LOUISE PERRY, surviving spouse and next kin of VINCENT MCKINNEY, deceased,<br><br>        Plaintiff,<br>v.<br><br>JENKINS & STILES, LLC,<br><br>        Defendant. | No. 3:21-CV-414-KAC-JEM |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion to Exclude Testimony of Dr. Wayne K. Ross [Doc. 315]. Plaintiff responded in opposition to the motion [Doc. 346]. Defendant filed a reply [Doc. 350]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion [**Doc. 315**].

**I.    BACKGROUND**

This lawsuit arose out of the death of Vincent McKinney ("Mr. McKinney") on April 15, 2021, at a U-Haul construction site [Doc. 270]. Defendant Jenkins & Stiles, LLC is a construction company, and it was the general contractor for the construction site [*Id.* ¶ 10]. Mr. McKinney was delivering cargo to the construction site, namely a load of five wrapped bundles of insulated panels [*Id.* ¶¶ 14–15]. While some of the facts are in dispute, the parties do not seem to dispute that as Curtis Kennedy ("Mr. Kennedy"), a forklift operator and jobsite superintendent for Defendant,

began unloading the cargo, the cargo fell off the trailer onto Mr. McKinney [Doc. 315 p. 2]. Mr. McKinney died on the scene [*Id.*].

"[Defendant] has admitted '[Mr.] Kennedy over engaged the forks, contacted the bundles on the far side and that the bundles fell when [Mr.] Kennedy began lifting'" [*Id.* (citation omitted)]. But Defendant "maintain[s] the cause of the death was [Mr.] McKinney's own actions leaving the area from beside his truck, after providing [Mr.] Kennedy with an all clear signal[] and walking under the bundles at the time [Mr.] Kennedy began unloading" [*Id.* (citation omitted)]. Plaintiff claims that "[Mr.] Kennedy failed to confirm the area around the trailer was clear and that it would be safe to commence offloading" [Doc. 270 ¶ 24 (emphasis omitted)].

Plaintiff disclosed Wayne K. Ross, M.D., P.C. ("Dr. Ross"), a forensic pathologist [Doc. 315-1 p. 1] as an expert witness. Plaintiff retained Dr. Ross "to determine the cause and manner of death and to assess for conscious pain and suffering" [*Id.*]. Dr. Ross sets forth five conclusions in his report:

> 1. The cause of death was Multiple Traumatic Injuries. On April 15, 2021, shortly after 9 a.m., a load consisting of two separate bundles of insulated panels fell from the flatbed trailer after falling off the trailer by a forklift and struck [Mr.] McKinney.
>
> 2. The conscious areas of the brain were intact even at the time of autopsy. Thus, [Mr.] McKinney was anatomically capable of experiencing conscious pain and suffering.
>
> 3. There were no preexisting injuries to the brain or comorbidities found at autopsy that would have prevented [Mr.] McKinney from experiencing conscious pain and suffering.
>
> 4. Upon impact, [Mr.] McKinney experienced at least 10 – 15 seconds of conscious pain and suffering, which began at the time the bundle struck his body. In addition, he also experienced emotional discomfort, anxiety, fear, and doom related anxiety.

2

> 5. [Mr.] McKinney felt excruciating physical pain as his face and skull fractured. He felt physical pain as the bilateral ribs were fractured, the organs were lacerated and hemorrhaged and as transection occurred to the spine, and as the pubic symphysis sustained injury. He also felt pain when the extremities fractured. He also experienced duress as he struggled to breath.

[*Id*. at 12].

Defendant challenges Dr. Ross's opinions pursuant to Federal Rules of Evidence 402, 403, and 702 [Doc. 315 p. 1]. First, it requests that the Court exclude Dr. Ross's statements about accident causation "because [they are] irrelevant to the opinions Dr. Ross was retained to provide" [*Id*. at 5]. "Alternatively," Defendant argues, "the Court should exclude those statements and testimony because Dr. Ross is unqualified to give such opinions" [*Id*.]. "[T]o the extent Dr. Ross attempts to rely upon Plaintiff's engineering expert's report to form the basis of his accident causation analysis," Defendant submits that "Dr. Ross failed to disclose that report as material he relied upon" [*Id*.]. Second, Defendant states that "Dr. Ross'[s] fourth and fifth conclusions contain impermissible legal conclusions and state of mind opinions on the alleged subjective feelings and experiences of Mr. McKinney" [*Id*. at 8].

Plaintiff responds by denying that Dr. Ross opines on accident causation [Doc. 346 pp. 3–4]. "Instead," she states, "Dr. Ross simply describes a brief synopsis of the facts he had been made aware of from both Robert Bullen's analysis (and which have largely been stipulated) to give context for his own opinions regarding [Mr.] McKinney's injuries and cause of death" [*Id*. at 3]. Further, Plaintiff claims, Dr. Ross's fourth and fifth conclusions "are grounded in objective medical and anatomical evidence, including the autopsy findings, established physiological principles, and peer-reviewed trauma literature" [*Id*. at 4]. She asserts that Dr. Ross is qualified to render his opinions and that his opinions are reliable [*Id*. at 4–11].

3

Defendant replies that Dr. Ross's statements about the cause of the accident are irrelevant [Doc. 350 pp. 2–3]. It contends that "the stipulations, concessions, and the proposed testimony of Robert Bullen [about the cause of the accident] would also make this testimony by Dr. Ross unnecessarily cumulative" [*Id*. at 3 (citation omitted)]. With respect to Dr. Ross's fourth and fifth conclusions, Defendant submits that it is not challenging his qualifications or methodology [*Id*.]. Stating that "the parties may be arguing semantics," Defendant asserts that it "is challenging . . . the portions of Dr. Ross'[s] ultimate conclusions that explicitly and unequivocally conclude what Mr. McKinney was feeling" [*Id*.].

## II. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

## III. ANALYSIS

The Court will exclude Dr. Ross's statements about the cause of the accident, but declines to exclude at this time, Dr. Ross's fourth and fifth conclusions.

### A. The Cause of the Accident

Defendant argues that "Dr. Ross'[s] report includes specific statements and testimony regarding the cause of the accident [that] the Court should exclude because it is irrelevant to the opinions Dr. Ross was retained to provide" [Doc. 315 p. 5]. "Specifically," Defendant claims, "[it] takes issue with Dr. Ross'[s] testimony regarding his analysis of how [Mr.] Kennedy attempted to lift the bundles and overextended the forks" [*Id.*]. It asserts that "there is no 'valid scientific connection' between the cause of the bundles falling off and the assessment or analyses on the cause of death or potential pain and suffering" [*Id.* at 6]. "Alternatively, should the Court find that it is relevant and helpful to the trier of fact," Defendant states that "Dr. Ross is unqualified to provide such an analysis" [*Id.* at 7]. In addition, Defendant submits that Dr. Ross is speculating on what Mr. Bullen will testify [*Id.* at 8].

Plaintiff responds that Dr. Ross does not provide an opinion about the cause of the accident but is "giv[ing] context for his own opinions regarding [Mr.] McKinney's injuries and cause of death" [Doc. 346 p. 3]. "Notably," Plaintiff states, "Dr. Ross's synopsis of facts he considered aligns with Defendant's initial stipulation that '[Mr.] Kennedy over[]engaged the forks, contacted the bundles on the far side, and the bundles fell when [Mr.] Kennedy began lifting" [*Id.* (citation omitted)]. She states that "[i]t also matches Defendant's more recent apparent admission" about the cause of the accident [*Id.* at 4]. "While Dr. Ross is not offering an opinion on accident causation," Plaintiff submits that "he should not be prohibited from testifying to facts that Defendant has already stipulated, including that [Mr.] Kennedy over-extended the forks, causing the bundles to fall off the flatbed trailer and onto [Mr.] McKinney" [*Id.*].

Defendant replies that "[n]otwithstanding Plaintiff's position that Dr. Ross provides no such opinion, Plaintiff argues Dr. Ross should be permitted to testify to such things because it has

6

been conceded, stipulated, and/or admitted by testimony" [Doc. 350 pp. 1–2]. But Defendant states that this "is not the test [for] admissibility under [Rule] 702 and *Daubert*" [*Id*. at 2]. Dr. Ross's testimony about the cause of the accident, Defendant submits, is irrelevant to his opinions and therefore unhelpful to the jury [*Id*.]. Defendant contends that any stipulations or concessions "actually closes the door to Dr. Ross testimony to such matters" because "[e]xpert testimony that does not go towards an issue is irrelevant and unhelpful" [*Id*. (citation omitted)]. Further, the stipulations and concessions render Dr. Ross's testimony "unnecessarily cumulative" [*Id*. at 3 (citation omitted)].

> Dr. Ross states:
>
>> A forklift being operated by Curtis Kennedy was positioning in the forklift on the passenger's side just prior to the incident. The forks on the forklift were maneuvered under the three (3) passenger side bundles just prior to the incident. The passenger side load was lifted upward but the forks extended too far laterally such that the tips of the forks caught the undersurface of the lower driver's side load. Thus, as the passenger's side load was being lifted, the driver's side load was lifted as well.
>>
>> The lifting of the dual load was unstable because the forks were not positioned completely under the driver's side load, so as a result, the driver's side load rolled off the truck bed, off of the driver's side.

[Doc. 315-1 p. 9].

Plaintiff does not dispute that Dr. Ross is not qualified to render an opinion on the cause of the accident [*See* Doc. 346 pp. 3–4]. And Plaintiff states that Dr. Ross is not providing an opinion on the cause of the accident; rather, Plaintiff states he is simply relying on Mr. Bullen's opinion and other admissions to provide context for his opinions. But Plaintiff does not explain how this context is relevant to Dr. Ross's opinions. Plaintiff retained Dr. Ross "to determine the cause and manner of death and to assess for conscious pain and suffering" [Doc. 315-1 p. 1]. How the bundles fell from the trailer or who caused the bundles to fall are not relevant inquiries to

7

Dr. Ross's analysis of these matters. *Johnson v. BLC Lexington SNF, LLC*, 478 F. Supp. 3d 578, 583 (E.D. Ky. 2020) ("Testimony is relevant if it helps the factfinder understand the facts." (citation omitted)). The Court therefore excludes this portion of Dr. Ross's opinion.

### B. Legal Conclusions and State of Mind Testimony

Defendant argues that "Dr. Ross[']s fourth and fifth conclusions contain impermissible legal conclusions and state of mind opinions on the alleged subjective feelings and experiences of Mr. McKinney" [Doc. 315 p. 8]. In addition, the fifth conclusion, Defendant states "contains opinions that go beyond an attempt to detail Mr. McKinney's state of mind but acts as an attempt to enflame the jury with verbose and extreme language and should also be excluded under [Rule] 403 as well" [*Id.* at 9]. It argues that "whether or not Mr. McKinney ultimately was conscious and experienced any pain and suffering, is a question of fact for the jury to decide" [*Id.* (citation omitted)]. "Therefore," Defendant submits, "Dr. Ross may suggest an answer, as he does in conclusions two and three by stating '[Mr.] McKinney was anatomically capable of experiencing conscious pain and suffering' and that nothing prevented this from occurring, but Dr. Ross may not provide the ultimate conclusion that Mr. McKinney did in fact experience pain and suffering as that is for the jury to decide" [*Id.* at 9–10 (footnote omitted)]. Further, Defendant contends, "Dr. Ross'[s] fourth and fifth conclusions contain impermissible state of mind opinions on alleged subjective feelings and experiences of Mr. McKinney" [*Id.* at 10]. It asks that the Court exclude conclusions four and five, in addition to the diagram, which "Dr. Ross intends to show the jury [because] it deals with these topics" [*Id.* at 11 (citing Doc. 315-3)].

Plaintiff responds that "Dr. Ross's conclusions are grounded in objective medical and anatomical evidence, including the autopsy findings, established physiological principles, and peer-reviewed trauma literature" [Doc. 346 p. 4]. In addition, she states that "his analysis of

consciousness duration and probable sensory experience relies on observable medical factors including the documented continuity of cardiac and respiratory function, evidence of oxygenated blood flow to the brain, and the absence of immediately incapacitating injuries" [*Id*.]. Stating that Dr. Ross is qualified to opine on Mr. McKinney's conscious pain and suffering, Plaintiff submits that "[c]ourts routinely permit forensic pathologists to opine on a decedent's conscious pain and suffering prior to death" [*Id*. (citation omitted)]. She details Dr. Ross's knowledge and experience to render these opinions [*Id*. at 4–7]. Further, Plaintiff denies that Dr. Ross's opinions constitute legal conclusions or improper state-of-mind testimony, arguing that "[h]e instead uses established scientific methodology to establish, to a reasonable degree of medical certainty, what sensations a person in Mr. McKinney's condition would likely experience in the seconds after the incident" [*Id*. at 7]. With respect to legal conclusions, Plaintiff states that "[t]he determination of 'conscious pain and suffering' in this context is fundamentally a medical question requiring specialized knowledge of anatomy, physiology, and pathology that is beyond the understanding of jurors" [*Id*. at 10]. "Any perceived weaknesses in his methodology or conclusions[,]" Plaintiff contends, "are properly addressed through cross-examination and contrary evidence, not exclusion of qualified expert testimony" [*Id*. (citation omitted)].

Defendant replies that it does not challenge Dr. Ross's qualifications or methodology [Doc. 350 p. 3]. "[W]hat Defendant is challenging[,]" it contends, "are the portions of Dr. Ross'[s] ultimate conclusions that explicitly and unequivocally conclude that Mr. McKinney was feeling" [*Id*.]. Defendant states that Plaintiff "appears to argue that Dr. Ross is opining on Mr. McKinney's ability or likelihood of experiencing conscious pain an suffering[,]" but that opinion "is not reflected in Dr. Ross'[s] ultimate conclusions" [*Id*.].

9

Plaintiff seeks damages against Defendant for Mr. McKinney's "mental and physical suffering [that he] endured . . . between the time he was crushed and his death" [Doc. 270 ¶ 55(a)]. "Under Tennessee law, recovery for pain and suffering requires proof of conscious injury." *Butcher v. Bryson*, No. 3:12-00251, 2014 WL 4385904, at *7 (M.D. Tenn. Sept. 5, 2014) (citation omitted). "[W]hether the decedent lived a few minutes after the accident so as to have suffered any pain as to authorize an award of damages [is] a question for the jury." *Thrailkill v. Patterson*, 879 S.W.2d 836, 842 (Tenn. 1994) (citation omitted). Plaintiff points out that several courts have allowed forensic pathologist experts "to opine on a decedent's conscious pain and suffering prior to death" [Doc. 346 p. 4 (citing *A.B. v. Cnty. of San Diego*, No. 18CV1541, 2020 WL 4430971, at *6 (S.D. Cal. July 31, 2020))].[1] Yet, experts cannot render legal conclusions or opinions on someone's state of mind. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) (explaining that "[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case" (citation omitted)); *Dinsmore & Shohl LLP v. Gray*, No. 1:14-CV-900, 2016 WL 11784514, at *3 (S.D. Ohio Apr. 5, 2016) ("An expert may not offer an opinion on someone else's subjective beliefs or feelings."). This is because such testimony is not helpful to the jury. *See Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (explaining that a legal conclusion is not helpful to the jury because it merely instructs the jury what verdict to reach); *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1013

---

[1] While Defendant does not cite any authority to counter this proposition, Defendant relies on *Leibfried v. Caterpillar, Inc.*, No. 20-CV-1874, 2023 WL 4080660, at *9–10 (E.D. Wis. June 20, 2023) [Doc. 350 pp. 6–7]. In *Leibfried*, the court found a licensed psychologist's opinion that the decedent experienced certain feelings before his death unreliable because it was based on his "work with hundreds of individuals who ha[d] survived life-threatening situations" and not "on any established principle of physiology or psychology." *Id*. at *5 & *10. But here, Defendant has not challenged the reliability of Dr. Ross's opinion, so *Leibfried* is inapposite.

10

(S.D. Ohio 2015) (stating that state-of-mind testimony is not helpful because "[t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury" (quoting *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)).

Here, Dr. Ross states that "to a reasonable degree of medical probability or more likely than not" Mr. McKinney experienced conscious pain and suffering, and he details such pain [Doc. 315-1 p. 12]. Plaintiff describes this testimony as an "analysis of consciousness duration and probable sensory experience" [Doc. 346 p. 4]. She later states that he "uses established scientific methodology to explain, to a reasonable degree of medical certainty, what sensations a person in Mr. McKinney's condition would likely experience in the seconds after the incident" [Doc. 346 p. 7]. Defendant does not dispute that this would be proper testimony [*See* Doc. 350 pp. 3–4 ("Defendant is not challenging Dr. Ross'[s] conclusions that Mr. McKinney was anatomically capable of experiencing conscious pain and suffering or that nothing impeded that ability."); *see also id.* at 4–7 (discussing cases, including *A.B.*, and acknowledging that courts allow expert testimony about the likelihood or possibility of pain perception and consciousness)]. And when reading Dr. Ross's full expert report, it does not appear that Dr. Ross intends to "unequivocally opine [on] what Mr. McKinney was feeling" at trial [*Id*. at 3]. To the extent Dr. Ross renders such opinions, the Court will exclude him from doing so at trial; however, he will be allowed to testify about what a person in Mr. McKinney's condition would have experienced.[2]

---

[2] Defendant states that Dr. Ross's verbiage in his fifth conclusion constitutes "an attempt to inflame the jury with verbose and extreme language" [Doc. 315 p. 9]. It does not identify the verbiage is considers to be prejudicial. The Court therefore does not address this argument.

11

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Exclude Testimony of Dr. Wayne K. Ross [**Doc. 315**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge